WITTERS, Receiver, etc., *v.* SOWLES, Executor, etc.

*(Circuit Court, D. Vermont.* October 19, 1885.)

NATIONAL BANKS—INSOLVENCY—ASSESSMENT OF SHARES OF STOCK IN HANDS OF EXECUTOR AND RESIDUARY LEGATEE.

H. B., at the time of his death, owned 430 shares of capital stock in a national bank, which he bequeathed to S. B. as residuary legatee. S. B. died, having bequeathed the shares to M. B. S. The executor, before the failure of the bank, on representation that there would be left for the residuary legatee, after paying debts and legacies, a large amount of real and personal estate, was ordered by the probate court to pay the legacies and turn over the balance to the residuary legatee. He transferred 400 of the shares to the residuary legatee. Afterwards he transferred 10 shares to another person without consideration, and in trust, leaving 20 shares standing in his own name as executor on the books of the bank when it failed. There were still claims against the estate which were in dispute, and the stock was not specifically mentioned in the will or the decree ordering it to be paid to the residuary legatee. *Held,* that the 400 shares turned over to the legatee were not liable to the assessment made by the comptroller of the currency upon the capital stock of the bank which were owned and stood in the name of H. B. at the time of his decease, but that the 30 shares in the name of the trustee and of the executor were liable to such assessment.

In Equity.

*Wilder L. Burnap* and *Daniel Roberts,* for orator.

*William D. Wilson* and *Albert P. Cross,* for defendants.

WHEELER, J. This bill is brought to reach the assets of the estate of Hiram Bellows, in the hands of the executor and legatees, to satisfy an assessment made by the comptroller of the currency upon capital stock of the bank which was owned by and stood in the name of Hiram Bellows at the time of his decease, and has now been heard on demurrer. According to the bill there were 450 shares. After the will was proved, and before any decree of distribution, 20 shares were transferred by the executor, and no question is now made about them. Susan B. Bellows, the widow, was residuary legatee. She died, leaving a will with the same executor, and Margaret B. Sowles resid-

uary legatee. Before the failure of the bank, on representation by
the executor that there would be left for the residuary legatee, after
paying debts and other legacies, a large amount of real and personal
estate, the state probate court ordered that the executor pay the leg-
acies, and decreed the residue to the residuary legatee. After this
decree the executor transferred 400 of the shares to the residuary
legatee. After that he transferred 10 more of the shares to another
person without consideration, and in trust, leaving 20 shares standing
in the name of the executor on the books of the bank at the time of
the failure of the bank and of the appointment of the receiver. The
statute makes the shareholders of national banks responsible equally
and ratably, and not one for another; and estates in the hands of
executors liable in like manner and to the same extent as the testator
would be if living. Rev. St. §§ 5151, 5152. The estate is not fully
settled. There are claims outstanding, unadjusted, and in litigation;
no property was described as decreed to the residuary legatee, and
this stock was not mentioned in either will or the probate proceedings,
therefore the 30 shares left standing on the books of the bank in the
name of the executor after the transfer of the 400 shares to the resid-
uary legatee remained in the hands of the executor. The title was
in him by virtue of his office of executor, and had never been taken
from him or transferred by him. The nominal transfer of the 10
shares of the 30 did not change the real ownership of them. The
title of the executor was not divested, and these shares remained in
the hands of the executor as before, and liable to assessment, although
the transferee may also be liable. *National Bank* v. *Case*, 99 U. S.
628.

That there were sufficient assets left to pay all debts against the
estate, aside from this assessment, appears on the face of the bill.
The decree of the residue, and the transfer of the 400 shares to the
residuary legatee by the executor, were in accordance with the stat-
utes of the state, and proper. Rev. Laws Vt. § 2061. The whole
title became vested in the residuary legatee unless the stock should
be needed to pay debts. It is alleged in the bill that the transfer
was without consideration, and made upon an understanding that
she might be entitled to the shares as residuary legatee, and to avoid
taxation, or as a temporary disposition of them to await the ultimate
settlement of the estates, and subject to be recalled at the conven-
ience of the executor. No consideration for the transfer was neces-
sary, unless the stock should be needed to pay debts. It was hers
subject to that contingency. The executor showed that it was not
needed, and by the transfer merely conferred upon her what was
really hers before. If the transfer had any effect upon taxation, it is
because the law would affect her property differently in that respect
in her own hands from what it would in the hands of the executor.
This would not affect her right to have her own property. If the al-
legation is intended to mean that there was an agreement that the

executor might recall the stock, he would have no right to recall it unless it should be needed for the payment of debts; and an agreement to transfer it back for any other purpose would not be binding upon the title, but would be merely executory. Bac. Abr. "Legacies," L; *Andrews* v. *Hunneman,* 6 Pick. 125. The statutes of the state confirm such disposition of the assets of an estate against claims not presented to commissioners because not arising in time, like this claim, and leave such claimants to pursue the legatees and not the executor. Section 2209 makes the legatees liable, so far as they have received assets, for what there is not enough in the hands of the executor to pay; and section 2214 exonerates the executor so far as he has administered. The estate is to stand as it was when the claim arose. Then the whole title to those 400 shares had passed from the executor to the residuary legatee. They are not wanted by any one for the payment of claims, for they create a claim against other estate instead of being assets for that purpose. They were not in the hands of the executor for the purposes of this assessment. *Bowden* v. *Johnson,* 107 U. S. 251; S. C. 2 Sup. Ct. Rep. 246. The demurrer must be sustained as to these 400 shares, and overruled as to the 30 shares.

Although the assets in the hands of the residuary legatee may, as between the legatees themselves, be ultimately liable for this claim, the creditor may in equity follow the assets into whose hands soever they may come. Bac. Abr. "Legacy," H; *Davis* v. *Weed,* 44 Conn. 569; Rev. Laws Vt. § 2209. The demurrer of all the defendants who are alleged to have received assets must now be overruled. Demurrer sustained as to 400 shares of stock, and overruled as to 30 shares of stock; defendants to answer over as to the latter by the fifteenth day of November next.