## Morgan *et al. vs.* Brower.

1. Where one owned all the shares of stock in a bank which owed no debts, and he was proceeding to wind up its business, when certain others solicited a transfer of the charter to them in order that they might do a banking business, and under advice of counsel as to how it could be done without liability on his part, he transferred all the stock to such other persons without any consideration therefor, and the bank transferred to him all of the assets and property belonging to it, he giving notice of the transfer of the stock under §1496 of the code, and thereupon the new owners of the stock paid in more than the amount of the property before the transfer and proceeded to do a banking business, subsequent creditors of the bank, who became such after the notice of the transfer of the stock was published, and who did not know of or rely on the conduct of the original stockholder, had no right of action against him, he having acted in good faith throughout the transaction.
2. Evidence was admissible for the purpose of showing the real character of the transaction, its *bona fides* and the circumstances surrounding it.

December 21, 1886.

Fraud. Corporations. Stock and Stockholders. Debtor and Creditor. Evidence. Before Judge Branham. Floyd Superior Court. March Adjourned Term, 1886.

The following is added to the report contained in the decision: This bill was originally brought by Samuel Morgan against Brower. The Bank of North America and F. A. Laidley & Co. were made parties complainant, alleging that they were creditors of the bank. The complainants claimed that Brower had rendered himself liable to them. They prayed that he be required to account for all the property received by him from the bank, and decreed to be liable for the value thereof.

The jury found for the defendant. The complainants moved for a new trial on twenty-two grounds. It is not necessary to set out all of them, many being similar in character. The following, together with the note appended thereto by the court, will show the points made:

(3.) Because the court allowed A. T. II. Brower to testify as follows: "Col. Samuel said that he could get a charter; but further said, as this would be of no further use to me, as I was going out of the business, that he would like for me to transfer it to him. I told him I didn't know whether I could do so without liability to me. He represented to me that he was going to do a large business; would bring in stronger men and do a larger business than we had done. . . . . . I told him I would submit it to my attorney in the matter, Col. Alexander, and if he said it could be done without liability to me, I would then do it as a favor, no consideration being asked."—The complainants objected to this testimony on the ground that it was hearsay, irrelevant to the issue and prior to the written contract between the parties.

(9.) Because the court allowed C. G. Samuel to testify as follows: "I did negotiate a trade with Capt. Brower and purchased from him the Bank of Rome building for Messrs. Frost & Panchen and myself. I told Capt. Brower, before the trade was executed by the delivery of title, but after the trade had been verbally agreed on as to price and terms, that I had agreed to join Messrs. Frost and Panchen in their banking business if they could get a charter to work under, and that I had a friend, who had means, that would take stock in a bank with a charter to work under, but would not in a private bank, and that Mr. Panchen requested me to know of him if he had any objections to our company's organizing under his charter. He replied he had no further use for the charter—did not consider it of any value, and as we had bought the building, if he could let us have the charter without incurring any responsibility, we could have it. After consulting his

attorney, he met me and remarked his attorney said he could let us have the charter without incurring any responsibility, provided he had no interest or connection whatever in the new organization; he further remarked, as you know, I am disgusted with banking in Rome; I am not likely to have any interest in another. He further said, my attorney will draw up such paper to make the transfer of the charter as is required to protect me, and then I will make you a present of it. He said he would not sell it."—Complainants objected to this evidence on the ground that it was hearsay, irrelevant, immaterial and in contradiction of the written contracts afterwards entered into, and the court overruled the objections and admitted the evidence.

(10.) Because the court allowed T. W. Alexander to testify as follows: " He (Brower) told me that Samuel wanted the charter and of his willingness to let him have it if he could do so without incurring any risk. I told him that he could do it; and for the purpose of transferring the charter, I suggested the plan and he adopted the plan of transferring the shares of the stock. It was not intended to transfer anything to them except the bank building and a few articles of office furniture, perhaps, mentioned in this paper. I never suspected that Brower or Samuel was seeking to conceal anything from the public, but the entire transaction, as it appeared to me, was honestly, fairly and openly conducted. There was nothing concealed about it; everything was put in writing and that notice put in the paper."—Same objection as stated in preceding ground.

(11.) Because the court charged the jury thus: " Among other questions for your decision will be, what was the contract between Frost, Samuel & Co. and the defendant, Brower?"—Complainants insist that, inasmuch as all the contracts between the parties were in writing, it was error to leave it to the jury to decide what the contract was, and that it was the duty of the court to construe the contract and writings.

(12.) Because the court, in charging the jury, said : " It is not controverted that Brower sold them the bank building at $7,600.00."—Complainants say this charge was against the evidence, and was a declaration of what had been proved, in the opinion of the court.

(13.) Because the court stated to the jury in the charge : " Nor is it controverted that Brower, on the 20th of February, 1879, transferred all the stock of the bank, 1,000 shares, to them (Frost, Samuel & Co.)."—Complainants did contend that 293 shares had been transferred on the 1st of February, 1879, and did insist on that fact as a badge of fraud.

(14.) Because the court in charging the jury, said to them : " The transfer of the stock reads as follows: ' For value received I hereby sell, transfer and assign to Frost, Samuel & Co. —— shares of stock within mentioned, and authorize ———— to make the necessary transfer on the books of the bank.

" 'Witness my hand and seal this 20th day of February, 1879.

A. THEW H. BROWER,

" 'Witnessed by D. ADAMS.                    President.'

" This endorsement stands upon the five certificates of stock held by the defendant, Brower, aggregating 1,000 shares, or all of the bank's stock."—Complainants insist that the court was mistaken in the above charge.

(15.) Because the court charged the jury thus : " The written papers, by their terms, make a sale and transfer of the stock by Brower to Frost, Samuel & Co., 'for value received,' paid for in part by allowing Brower to retain the property of the bank, or by a transfer and assignment thereof to him by Frost, Samuel & Co.   But you are authorized to take into consideration the oral evidence bearing on these parts of these instruments, to-wit:  On the words ' for value received ' in the written transfers of the stock, and on the words ' retain ' and ' transfer and assign ' in the papers signed by Frost, Samuel & Co., and all the oral evidence in connection with the written, and determ-

ine for yourselves what was the consideration of the transfer of the stock, and what was the contract and agreement of the parties in relation to this entire transaction."— Complainants insist that this charge allowed the jury to consider the oral evidence and to set up a contract and agreement in contradiction of the writings, and that there was no ambiguity which was not fully explained by the writings, and that all the oral explanations offered by the parties and allowed by the court contradicted the writings.

(22.) Because the court charged the jury thus: "Upon the main issue in the case, you will first inquire whether the transaction between Frost, Samuel & Co. and Brower, of the 20th of February, 1879, was made by Frost, Samuel & Co. with intent to defraud their subsequent creditors or others dealing with the bank or not. If it was not made with such intent, then you will find for the defendant."— Complainants insist that this charge took from the jury the right to consider all the other issues in the case, and that the contracts and agreements between the defendant and Frost, Samuel & Co. were *per se* fraudulent, and the court should have so charged, instead of leaving it to the jury to say what the intent of one party to the transaction was.

The court appended the following note:

"Mr. Fouché objected, on the reading of Brower's testimony, to so much of his testimony as relates to the conversation between him and Samuel. The court allowed the conversation to go to the jury to show the good faith or bad faith of that particular transaction, and with that view only, and said to the jury: 'The jury will understand that the statements of Samuel are not allowed to go to the jury to prove the truth of what he said at that time, but for consideration by them when they are inquiring into the good faith or bad faith of the parties in that transaction. It cannot go to the jury for any other purpose, and this ruling may be considered as applying to all the conversations between Brower and Samuel.'

"So far as the objections made in the grounds of the motion above mentioned, were to the testimony as varying the contract, the court ruled as follows:

" 'I think all the facts and circumstances that governed this transaction ought to go to the jury. The answer of Brower lays the foundation for this sort of evidence. He sets up what the transaction was; also, one of the questions in the case is that of fraud, as already stated.'

"An additional reason for admitting part of this testimony was, to explain the consideration of the contract and what seemed to the court to be an ambiguity therein, as will appear from the charge which is of file as a part of the record, and from which it will be also seen that the court instructed the jury to ascertain what the real transaction between the parties was.

"After stating to the jury the position of the parties from the pleading and before beginning the charge proper, the court said to counsel: 'Gentlemen, if I should misstate any of your positions or admissions, I will thank you to correct me.' No corrections were made. At the conclusion of the charge, the court asked: 'Now, gentlemen, is there anything more to be said to the jury?' No corrections or suggestions were made to the court by counsel for plaintiff in error in reply thereto. The motion was certified with the understanding that it should be corrected on the hearing."

DABNEY & FOUCHE', for plaintiffs in error.

C. N. FEATHERSTON; ALEXANDER & WRIGHT, W. W. BROOKES, for defendant.

BLANDFORD, Justice.

Brower and one Ogden owned all the stock in the Bank of Rome. Brower bought Ogden's stock and became the sole owner of the shares of stock in the bank, in all one thousand shares. There were no debts due by the bank, and Brower determined to cease to do a banking business. Frost, Samuel & Co. purchased from Brower the bank building, safe and other furniture of the bank, and knowing that Brower had determined to close the bank, they solicited him to transfer the charter to them. He expressed a willingness to do so if the same could be done so as not to involve him in liability. Counsel was consulted by both parties, and they advised it could be done by Brower's transferring all the shares of stock to Frost, Samuel & Co.; and at the same time the bank was to

transfer to Brower all the property and assets of the bank, amounting in value to forty thousand dollars. This arrangement was consummated, Brower receiving nothing for the shares transferred by him to Frost, Samuel & Co. The bank was reorganized by the election of a president and other officers of the bank. Brower gave notice under section 1496 of his transfer of this stock. Frost, Samuel & Co. placed in said bank fifty thousand dollars in money, stock, notes and collaterals, and the shares were issued:

| | |
|---|---:|
| To E. D. Frost | $22,500 00 |
| To Frost, Samuel & Co. | 12,500 00 |
| To C. G. Samuel | 10,000 00 |
| To M. P. Deason | 5,000 00 |
| Total | $50,000 00 |

A notice was published by the new officers, stating that the business of Frost and Panchen had been merged in the bank, and that they had purchased the entire franchise and the property of the Bank of Rome. This notice was signed by C. G. Samuel, and dated February 20th, 1879. After this time, to-wit, on the 18th November, 1879, the bank was made a State depository, and in October, 1879, Samuel Morgan became one of the sureties for the bank to the State. In March, 1881, the bank failed and made an assignment. Morgan had paid to the State 25,000 dollars as surety for the bank upon an execution issued by the governor. Laidley & Co. were creditors of the bank at the time of its failure, and so was the Bank of North America. The indebtedness of the bank accrued to the plaintiffs after the transfer of the stock by Brower to Frost, Samuel & Co., and the reorganization of the bank under such transfer, and after the lapse of six months after Brower's notice of his transfer of stock to Frost, Samuel & Co. These are the main facts upon which the plaintiffs in error seek to hold Brower liable to them to the amount of the assets of the bank at the time he made the transfer of shares of stock to Frost, Samuel & Co. (For a more

full and particular statement of facts, see the case of *Fouché, assignee, vs. Brower,* reported in 74 *Ga.* page 251). The case came on for a hearing, and the jury found the facts in favor of Brower. Thereupon, the plaintiffs moved the court for a new trial, which motion the court refused. Plaintiffs excepted, and this is the error assigned.

It is insisted that the fact that Brower transferred all the shares of the Bank of Rome to Frost, Samuel & Co., *ipso facto* transferred all the property and assets of the bank at the same time; and the reconveyance of the same to Brower by Frost, Samuel & Co. was a fraud on the public and rendered Brower's title void. Our code, §2634, declares that "fraud may exist from misrepresentation by either party made with design to deceive, or which does actually deceive, the other party. . . . . . A misrepresentation not acted on is no ground for annulling a contract." It was held by this court, 20 *Ga.* 517, that a misrepresentation not acted on was no ground for a suit in equity. It is admitted by both parties that Brower acted in good faith; that the transfer of the shares of stock was made merely to invest Frost, Samuel & Co. with the charter of the Bank of Rome; that Brower received nothing for the same; that at the time Brower was the only stockholder in the bank and the bank owed nothing; and that Brower had notified the Governor that, on the 20th February, 1879, the bank would cease to do business; so that at the time of the transfer Brower owned all the property of the bank. Hence if Brower could be made liable at all, it would be for transferring this stock, thereby representing that his successors in the bank had the capital stock of the bank, fifty thousand dollars, when, in fact, he had withdrawn the entire property and assets of the bank; and that this conduct of Brower amounted to a misrepresentation of the solvency of the bank. But the evidence in the record fails to show that the plaintiffs knew or acted upon anything which Brower did; but, on the contrary, that they give credit to the bank and reposed confidence

in it after its reorganization by Frost, Samuel & Co., and at a time when, by the notice of Brower, they were charged with notice that Brower had nothing to do with the bank. The case of *Wright vs. Zeigler Bros.* 70 *Ga.* 508, contains an able review of this subject, and shows conclusively that, notwithstanding any act or whatever may have been done by Brower, yet as the same was not acted on by the plaintiffs, there is no liability on the part of Brower to them; and that they can maintain no suit in equity against him. This would seem to be sufficient that the decree in favor of Brower was right. That Brower obtained the title to the property and assets of the bank as against the bank itself, was decided in the case of *Fouché, assignee, vs. Brower,* 74 *Ga.* 251, and that as to subsequent creditors they cannot be heard to complain. In the case of Graham *vs.* Railroad Company, 102 U. S. 148, the court held, " where a corporation has waived or omitted to institute proceedings to recover property of which it had been defrauded, such right does not inure to the benefit of subsequent creditors," certainly a much stronger case than the present, in which there is no fraud; and the title to Brower in the property and assets of the bank was obtained in good faith by him. See also the case of Lloyd *vs.* Fulton, 91 U. S. 485. There are many assignments of error as to the admission of evidence by the court, but when they are examined it will be found that the evidence admitted was for the purpose of showing the real character of the transaction, its *bona fides,* and what really occurred and the circumstances surrounding the same, which was entirely proper. 2 Whar. Ev. §§920, 923; 55 N. Y. 222. The court committed no error in the admission of the evidence. We see no material error in the several rulings of the court complained of, and even if there was, it would take a strong case to reverse a judgment which is right upon the main facts of the case.

Judgment affirmed.