G. N. TOMPKINS v. MATT MCKINNEY.

No. 925. Decided June 28, 1900.

**1. School Land—Statute Construed—County Organization.**

Revised Statutes, article 4218y, authorizing the sale of detached sections of school land without actual settlement, in counties organized prior to January 1, 1875, applies to Coleman County, first organized in 1864, but which became disorganized in 1872, and remained without county officers or government until reorganized in February, 1875. (Pp. 630-632.)

**2. Same.**

Such county coming within the letter of the statute, in order to give a different construction to the words used, some reason must be shown for disregarding their ordinary meaning, which in this case is found to accord also with the spirit of the law. (P. 631.)

**3. County—Disorganization—Corporate Existence.**

The fact that a county became disorganized and was without officers, did not destroy its corporate existence, but suspended its powers, which were revived by reorganization. (P. 632.)

QUESTION CERTIFIED from the Court of Civil Appeals for the Third District, in an appeal from Coleman County.

*Sims & Snodgrass,* for appellant.—A failure of the county officers of Coleman County to act and perform their duties as such does not affect the existence of the county as an organized county and does not act as a dissolution thereof.    State v. Dunson, 71 Texas, 70; Buford v. State, 72 Texas, 182; Clark v. Goss, 12 Texas 397; Cooley, Const. Lim., 227.

*Randolph & Randolph,* for appellee.—The recognition of a county as organized when it is not can not have the effect to create an organization. 7 Am. and Eng. Enc. of Law, 908; 12 Kan., 441; 132 U. S., 202.

As to what is necessary to constitute an organized county: 7 Am. and Eng. Enc. of Law, 906.

Definition of and distinction between counties and towns and cities. 4 Am. and Eng. Enc. of Law, 343; Id., 32; 7 Id., 904.

A county may be created and exist without any inhabitants or any character of government.    7 Am. and Eng. Enc. of Law, 905.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Third District has certified to this court the following statement and question:

"This suit involves the title to 160 acres of school land, isolated and detached from other public lands.    The appellant is not an actual settler upon the land, but claims the right to purchase it under article 4218y of the Revised Statutes.    Appellee McKinney claims the land as an actual settler.    Tompkins made application to purchase on July 11, 1898, and McKinney's application was made nine days thereafter.    The testimony shows that Tompkins complied with the requirements of the statute authorizing the purchase of isolated and detached school lands under article 4218y, and has title thereto and is entitled to a judgment therefor, if the Commissioner of the Land Office was authorized to sell sections and fractions of sections of isolated and detached school land in Coleman County without actual settlement being made thereon by the purchaser.

"The testimony shows that Coleman County was first organized in 1864, which organization lapsed a few years thereafter; but the county was again organized, the exact date of the second organization not being shown by the testimony.    Under the second organization, as under the first, county officers were elected and re-elected; and they continued to discharge the duties of their respective offices until some time in the year 1872, when it seems that the county was disorganized by act of the Governor of the State; and from that time until the early part of the year 1875, the county was disorganized, and had no county officers or county government.    In February or March, 1875, the county was reorganized and has maintained its organization ever since that time.    The Commissioner of the General Land Office made a certificate stating that it appears from the records of that office that Coleman County was organized as a county on October 6, 1864, and as a separate land district in 1879; and on April 7, 1874, said county was attached to Brown County

for surveying purposes, and remained so attached until the organization of Coleman County as a separate land district in 1879, and has been so recognized and treated in the transaction of all business in the General Land Office pertaining to Coleman County and the public free school lands situated therein.

"One of the material questions presented for decision is whether or not, under the facts stated, Coleman County comes within the purview of the latter half of article 4218y, which reads as follows: 'And all sections and fractions of sections in all counties organized prior to the first day of January, 1875, except El Paso, Presidio, and Pecos counties, which sections are isolated and detached from other public lands, may be sold to any purchaser except to a corporation, without actual settlement, at one dollar per acre, upon the same terms as other public lands are sold under the provisions of this chapter.' And this question, the Court of Civil Appeals certifies to the Supreme Court for decision. In other words, to come within the meaning of the statute quoted, must it appear that the county in which the land is situated was organized prior to the first day of January, 1875, and has continuously maintained its organization; or will it suffice if an actual pre-existing organization be shown, though such organization was not in existence on the first day of January, 1875, but was resumed a few months thereafter and has continued ever since?"

Coleman County is embraced in the terms of article 4218y, and the isolated and detached sections of the public free school lands situated in that county are subject to sale without actual settlement.

Coleman County was organized prior to January 1, 1875, and is within the letter of the law quoted in the question. In order to give a different construction to the words used, some reason must be shown for disregarding their ordinary meaning. Sutherland, Stat. Con., sec. 247.

The ordinary meaning of the language accords with the spirit of the law. The public free school lands had been on sale in the older counties of the State for a number of years and had been taken up by purchasers, except sections and parts of sections which were not desirable for settlement, and, for that reason, could not be sold under the general regulations and prices fixed for the sale of the school lands. For the purpose of placing such lands on the market upon special terms that would offer inducements for their purchase, the Legislature, in the year 1887, enacted article 4218y, in substance. It was necessary, in some way, to distinguish those lands which were to be placed upon the market on special terms from the body of such lands, and the Legislature adopted the plan of designating them by the date of organization of the counties in which they were situated. The law prescribed a qualified voting population as necessary to the organization of a county, and the date of organization represented the time at which the settlement of a particular county reached the point,—when it had a population containing 150 voters,— and a county which was organized prior to 1875 must have had a population requisite for organization and was classed with those that had pre-

viously been organized. It was assumed that within the twelve years which elapsed, the school lands in all such counties had been taken up and appropriated practically to the same extent, rendering the conditions in all so nearly uniform as to justify the application of the special terms to all of them.

The actual organization of a county in no way affected the question of the condition of the public lands therein nor the propriety of selling them to persons who were not actual settlers, except that it showed the status that made it necessary to offer special inducements to purchase lands so situated.

If a county seat was selected for Coleman County, under the original organization, it continued to be the county seat after reorganization, and title to the courthouse and jail, if acquired, remained with the county during the lapse in the exercise of its corporate functions. If debts were contracted by the county after organization and before it became disorganized, liability rested upon the county after it was reorganized. The fact that the officers ceased to perform their duties did not destroy the corporation, but suspended its powers, which were revived by reorganization.