**CHAPMAN, Commissioner of Insurance, v. THOMAS et al. (No. 88.)\***

(Court of Civil Appeals of Texas. Eastland. Jan. 29, 1926. Rehearing Denied April 23, 1926.)

1. **Banks and banking 47(1)—Defendants, to be liable for assessment on stock, must have been stockholders by agreement, express or implied, at time bank failed.**

Defendants, sued for assessment of bank stock, must have been stockholders at the time the bank failed, and they could only become such by agreement and contract, either express or implied.

2. **Banks and banking 47(1).**

As respects stockholders' liability, issuance of stock in reorganized bank for shares of insolvent bank in less amount than agreed *held* not to bind persons to whom issued so as to make them stockholders.

3. **Banks and banking 47(1).**

As respects stockholders' liability, bank cannot, by issuing stock, in absence of agreement, make persons stockholders without delivery of shares.

4. **Banks and banking 47(1)—Defendants held not stockholders of bank if stock was never delivered and was merely issued by bank shortly before closing in attempt to make them liable for an assessment.**

Former stockholders in insolvent bank, who surrendered stock for reissue of shares in reorganized bank, *held* not liable as stockholders, if stock was issued but not delivered on day bank closed merely to charge defendants with liability and add asset to insolvent bank.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Separate suits by J. L. Chapman, Commissioner of Insurance, against Ethel Thomas, and against R. O. Thomas and his wife, Viola Thomas. Charles O. Austin, Commissioner, was substituted as plaintiff, and suits were consolidated and tried together; separate judgments being rendered in favor of plaintiff against defendant Ethel Thomas and in favor of defendants R. O. Thomas and Viola Thomas. From the judgments rendered, plaintiff appeals. Affirmed.

Stinson, Coombes & Brooks, of Abilene, for appellant.

Wagstaff, Harwell & Wagstaff, of Abilene, for appellees.

RIDGELL, J. On November 27, 1923, two suits were filed in the district court of Stephens county, Tex., by J. L. Chapman, commissioner of insurance of the state of Texas, one against Ethel Thomas for $533.33, and the other against R. O. Thomas and wife, Viola Thomas, for $2,166.66, for assessments against them as alleged stockholders of certain insolvent state banks, and for 6 per cent. interest from January 1, 1922, and costs of suit and pleas of privilege were filed by defendants and sustained by the court, and the cases transferred to the district court of Taylor county, Tex., where the plaintiff's petitions were amended, substituting Chas. O. Austin in his official capacity as commissioner as plaintiff, and the two suits were consolidated and tried together, before the court without the intervention of a jury and separate judgments rendered, one in favor of the plaintiff against Ethel Thomas for $200, with 6 per cent. interest from January 1, 1922, and costs of suit, except the cost of removal from the district court of Stephens county, and the other judgment in favor of defendants R. O. Thomas and Viola Thomas, that plaintiff take nothing against them, but that they go hence without day and recover their costs.

The plaintiffs excepted to both judgments, and gave notice of appeal, and the defendant Ethel Thomas also excepted and gave notice of appeal, but did not perfect same. The plaintiff, not being required to give bond, assigned errors, filed within the proper time the statement of facts, and both cases are now before this court for review.

By propositions 1 and 2 it is insisted that the representations relied upon by appellee, and which are claimed to be fraudulent, were made by John W. Baker individually and not in his representative capacity, and further that same was merely expression of an opinion and not representation of facts, and therefore same would not be available as a defense to this court.

The facts show that appellees were stockholders in the Guaranty State Bank of Breckenridge; that R. O. Thomas, owned 40 shares and Viola Thomas 25 shares; that said bank was closed, and that appellees paid an assessment of $6,500; that thereafter, the Breckenridge State Bank was organized and took over the assets and liabilities of the failed bank; that said bank, after organizing, increased its capital stock from $100,000 to $200,000, and the commissioner of insurance and banking issued his certificate permitting said bank to do business based on amendment increasing its capital stock.

It is further shown:

That on November 4, 1921, John W. Baker, vice president, addressed a letter to both appellees as follows:

"Dear Sir: If you have not sent your stock in for reissue please do so at once."

That before the bank closed on Saturday, appellees mailed their stock to the bank.

It is shown that prior thereto, and about 20th day of August, R. O. Thomas was in the bank, and that John W. Baker, vice president, approached said Thomas about sending in his stock, and, upon being asked about the bank, Baker stated that it was in good shape, and that it would make the stockholders some

money, that it was not stated how much stock would be issued, and that Thomas expected the full amount. The new stock was issued on the morning of the day the bank closed its doors.

Assuming as we must that the bank made the false and fraudulent representations, would said representations be the act of the bank, or would they be merely an opinion expressed in one's individual capacity. In view of all the facts and the request by letter requesting the appellees to send in their stock, it cannot be said, to the exclusion of any other reason, that same was an opinion, and thereby not fraud or anywise binding on the bank. The bank acts through its managing officers, and fraud can thus be perpetrated for and in the name of the bank.

If the bank was in bad condition and failing circumstances, and the representations were made and request for the stock was made, then it cannot be said that same might amount to fraud, enforceable as between appellees and bank. Ruling Case Law, vol. 7, p. 275.

As between creditors, the rule would be different. Chapman v. Harris (Tex. Civ. App.) 275 S. W. page 75. While the burden would be upon the appellees to show no liability of the bank was created after the illegal fraudulent acts, still, in this case, the presumption might arise that none was created by this bank during brief interval and at a time when it was insolvent, when to do so would have been a violation of a penal statute.

The controlling question is whether appellees were stockholders, and a decision of above question is not necessary for the disposition of this appeal.

[1, 2] By proposition it is asserted that appellees were stockholders and thereby liable for the assessment sued for in this case. It appears that by request made by the letter, the appellees mailed their stock to the bank under belief that stock would be issued for full amount. This stock was received a short time before the bank closed. On the morning the bank closed, the officers of the bank issued this stock to appellees, but it was never delivered. The bank closed its doors at noon, and the stock was issued between the hours of 9 and 12 o'clock that day.

[3] The testimony shows that appellees did not receive the stock, that it was never delivered, and that they would not have accepted same. To be liable, the appellees must have been stockholders at the time the bank failed. They could only become stockholders by agreement and contract, either expressed or implied. Under the facts they did not agree to accept this amount of stock, and to offer a different or less amount than agreed would not be binding on appellees. The bank, in absence of agreement, could not make appellees stockholders by merely issuing the stock.

[4] Under the facts as we must resolve found by the trial court, the appellees were not stockholders. Gilmore v. Chapman, Com'r, 283 S. W. 243, decided by this court and not yet [officially] reported; Hodge v. Cushing (C. C. A.) 285 F. 158.

The acts of fraud are strongly supported by the act of the bank a few hours before closing, issuing the stock, never delivering same, and thereby attempting to render appellees liable for an assessment. No other motive could have prompted, at that late hour, this act of the bank, and the writer does not believe any court could sanction an act done merely to promote a liability on appellees and add an asset to the broken bank and where the circumstances indicate that the right of no creditor was periled or abridged.

For the reason that the facts show that appellees were not stockholders in the Breckenridge State Bank, and therefore not liable for the assessment, the judgment of the trial court, as prayed for by appellees, will be affirmed.