CHARLES O. AUSTIN, COMMISSIONER OF BANKING v.
MRS. LOU STRONG.

No. 4949. Decided January 25, 1928.
(1 S. W., 2nd Series, 872).

*L. L. James, John W. Goodwin, L. C. Sutton* and *Joe T. Goodwin,* for appellants.

Upon the death of T. A. Strong, husband of the plaintiff, she immediately became the owner of all of his property, including the five shares of stock in question, and having made no disposition of it, she was the owner of said stock at the time of the closing of said Security State Bank and was liable on the assessment levied on said stock.

The bank stock in question being the community property of plaintiff and her deceased husband, she was jointly liable with him for an assessment on such stock.

### ON MOTION FOR REHEARING.

The statute gave to the husband the management and control of the community property. He was, in effect, the agent of the wife with reference to the community property, both in its sale and acquisition, and he represented her in all contracts made and she was bound thereby. He having the absolute management and control of the community property, it is not necessary that he consult her or that she consent to the acquisition of property. She is bound by his acts just as much as if he held a written power of attorney authorizing him to buy the stock. In the instant case there existed between appellee and her husband a community co-partnership and the statute constituted the husband agent to conduct the business of the community. As such agent he could invest the community property in lands, chattels or bank stock. He was agent of the community for that purpose and the property acquired by him belonged to the community co-partnership and the wife was owner of one-half of the property so acquired and as such equitable owner, she would certainly be liable to assessment. Appellee, though merely the equitable owner of one-half interest in the stock acquired by her husband is, and always has been, a stockholder of the bank and therefore liable to assessment to the extent of her interest in the stock. 1 Michie on Banks and Banking, 170.

*Clark, Harrell & Starnes* and *C. C. McKinney,* for appellee.

One cannot be forced to assume the contractual relation of a stockholder in a banking corporation together with its attendant liability and, under the facts certified, Mrs. Strong never became the owner of the stock. Gilmer v. Chapman, 283 S. W., 243; Hodge v. Cushing, 285 Fed., 158; Williams v. Vreeland (U. S.), 39 Sup. Ct. Rep., 438, 3 A. L. R., 1038; Shean v. Cook, 170 Pac., 185, 3 A. L. R., 1042, and note beginning on p. 1049. In "Kisner Estate," 254 Pac., p. 603, the Supreme Court of Pennsylvania says: "No man can be compelled to become a member of a corporation without his knowledge or consent."

The relation between a stockholder and a corporation is contractual and the liability for an assessment against the stockholders of an insolvent bank arises from this contractual relation. Matteson v. Dent, 176 U. S., 321, 44 L. Ed., 571; Richmond v. Irons, 121 U. S., 27, 30 L. Ed., 864; Yeamon v. Galveston City Co., 167 S. W., 710; Turner v. Cattlemen's Trust Co., 215 S. W., 831; 18 C. J., p. 951; 2 Cook on Corporations, p. 1393; Butler University v. Scoonover, 114 Ind., 381; Wadsworth v. Bales, 60 Pac., 334, and cases cited.

Even if stock is issued to one *with* his knowledge, but *without* his consent, it has been held that this fact alone does not render him liable as a stockholder. Greene v. Sigua Iron Co., 22 C. C. A., 636, 45 U. S. App., 162, 207, 76 Fed., 947; Carey v. Williams, 25 C. C. A., 227, 51 U. S. App., 204, 79 Fed., 906; Sigua Iron Co. v. Greene, 44 C. C. A., 221, 104 Fed., 854, certiorari denied, 180 U. S., 637, 45 L. Ed., 710, 21 Sup. Ct. Rep., 920; Foote v. Anderson, 61 C. C. A., 5, 123 Fed., 659; Grier v. Union Natl. Life Ins. Co., 217 Fed., 287; Mudgett v. Horrell, 33 Cal., 25; Girard Life Ins. Annuity & T. Co. v. Loving, 71 Kan., 558, 81 Pac., 200.

Under the express statutory provisions of this State, the separate property of the wife cannot be held liable for community debts. Rev. Stats. of 1925, Art. 4616; Lynch v. Elks, 21 Texas, 229; Farr v. Wright, 27 Texas, 96; Trimble v. Miller, 24 Texas, 215; Covington v. Burleson, 28 Texas, 368; Menard v. Sydnor, 29 Texas, 257; Blanderburg v. Norworth, 66 S. W., 587; Hamlett v. Leicht, 187 S. W., 1004.

An heir is not liable for the debts of an estate unless he has received property from the estate and then only to the extent of the value of such property. In this case it is not even alleged or certified that Mrs. Strong received any such property and that question is not

in the case. Art. 3464, Rev. Stats. of 1925; Blinn v. McDonald, 92 Texas, 604; Bank v. Cox, 218 S. W., 82.

Mr. Judge LEDDY delivered the opinion of the Commission of Appeals, Section B.

Certified questions from the Court of Civil Appeals for the Fifth Supreme Judicial District. The certificate is as follows:

"Mrs. Lou Strong, the appellee, brought this suit in the District Court of Delta County against Charles O. Austin, Banking Commissioner of Texas, to recover $726.86, the amount she had on deposit in the Security State Bank of Cooper at the time the Banking Commissioner took charge of its affairs for the purpose of liquidation.

"The facts are undisputed, and, as found, both by the trial court and this court, are as follows:

"The Security State Bank of Cooper, a State banking corporation, was organized in May, 1921, and at that time T. A. Strong, deceased husband of appellee, became the owner of five shares of its stock of the par value of $100 per share. This stock was owned by Mr. Strong at the time of his death in April, 1924, and constituted a part of the community estate of himself and wife. He died intestate; there was no administration of his estate and no necessity therefor; he left no child, children or their descendants, and appellee, the survivor of the community, is the sole and only person under the law to whom the community estate would go. On January 1, 1925, the Security State Bank closed its doors on account of insolvency, and its affairs were taken over by Charles O. Austin, Banking Commissioner, for the purpose of liquidation, and at that time appellee had on deposit in the bank the sum of $726.86, entitled to protection from the bank guaranty fund.

"On February 4, 1925, the Commissioner of Banking levied on each owner of stock in the bank a 100 per cent assessment for the benefit of its creditors, and at this time the stock in question was on the records of the bank in the name of T. A. Strong, deceased, although the Commissioner treated appellee as the owner of the stock and insisted that she was liable for the assessment.

"Mr. Strong left no estate subject to the payment of debts; the stock in question was of no actual value at that time nor at the time the bank was closed. Appellee did not regard the stock of any value at the time of her husband's death, and would not at that time have purchased stock in the bank nor would she have accepted the same,

under the circumstances, as a gift, and has continuously renounced any ownership or title to said stock. Within due time after the bank was closed, appellee presented to appellant a claim, properly verified, for the amount of her deposit in the bank, to-wit: $726.86, for allowance on an unsecured, non-interest-bearing claim against the bank guaranty fund. The Commissioner refused to allow the claim on the ground that appellee owed the $500 assessment on the stock and that he had the right to have the deposit applied first to its payment. In answer to the suit filed by appellee, appellant alleged the facts substantially as detailed herein and insisted, in the nature of a plea of set-off, that he, as Commissioner, was only liable to appellee for that portion of deposit over and above the amount of her liability on the assessment.

"The trial court's conclusion of law was to the effect that, appellee, under the facts, was not a stockholder in the bank within the meaning of the banking laws of the State, and that she was not liable for the assessment, and accordingly rendered judgment for appellee against appellant for the full amount of the deposit, with interest and costs; established the same as a valid claim against the guaranty fund, and denied appellant's plea of set-off. On this appeal, but one question was presented for our consideration—that is, as to the correctness of the legal conclusion of the trial judge and the judgment based thereon.

"On original submission, this court sustained the contention of appellant, holding that, under the facts, appellee was, as survivor of the community, owner of the five shares of stock in question, and was personally liable for the payment of the assessment, and, therefore, was entitled to recover from the Commissioner of Banking only that portion of the deposit over and above her liability as stockholder, and accordingly we reformed and affirmed the judgment. The opinion of this court, disposing of the questions raised, will be transmitted with other papers accompanying this certificate, from which we apprehend the Honorable Supreme Court will have no difficulty in ascertaining the precise questions ruled upon.

"We have the motion of appellee for rehearing under consideration and, pending action thereon, we have deemed it advisable to present to the Honorable Supreme Court for adjudication the issues of law that arose from these facts—that is, *first:* was appellee the owner of the five shares of stock in the Security State Bank of Cooper at the time the Commissioner of Banking levied the assessment; second, was she personally liable for the payment of the

assessment, and third, if liable, was appellant entitled to plead her liability in set-off to her action against him for the recovery of the deposit?"

The claim sought to be enforced by the Commissioner of Banking is founded upon Art. 525, Rev. Stats., 1925, which provides, that, "if default shall be made in the payment of any debts or liabilities contracted by a bank, savings bank or trust company, each stockholder of such corporation, as long as he owns shares therein, and for twelve months after the date of a transfer thereof, shall be personally liable for all debts of such corporation existing at the date of such transfer, or at the date of such default, to an amount double the value of such shares."

Appellee's liability for the assessment on the bank stock, owned by her husband at the time of his death, is dependent upon whether she was a stockholder in the bank, within the meaning of such provision of the statute. A proper consideration of this question involves an ascertainment of the basis of the relation of stockholders in State banks. A careful examination of the authorities discloses a practically universal holding that such relation is one created solely by contract, either express or implied. The established rule is well stated in Corpus Juris, Vol. 14, p. 507, Sec. 752, as follows:

"The relation of stockholders to the corporation whose stock they hold is that of contract, and the rights, duties and liabilities of both parties grow out of the contract, express or implied, in a subscription for or purchase of stock, construed by the provisions of the charter or articles of incorporation; and therefore, to make one a stockholder, with the rights and subject to the liabilities which arise out of that relation, a contract, express or implied, between him and the corporation must be established."

Michie on Banks and Banking, Vol. 1, p. 163, states the rule to be:

"Bank stockholder's individual liability is contractual in its nature. It is based upon the contract of subscription, the implied terms of that contract being the declaration of the statute that a certain contingent liability should follow the subscription."

In Ruling Case Law, Vol. 7, Sec. 277, a similar doctrine is announced in the use of this language:

"The relation of stockholders to the corporation whose stock they hold is that of contract, and all the rights and duties of both parties grow out of the contract, express or implied in the subscription for stock."

The leading text writers, in discussing this subject, recognize the doctrine as above stated to be well settled. Morawetz on Corp., Sec. 870; Thompson on Corp., Secs. 3056, 4790; Cook on Stock and Stockholders, Sec. 223.

In Chavous v. Gornto, 89 Fla., 12, 102 So., 754, in discussing this question, it was remarked:

"The doctrine is settled that the liability of a stockholder in a banking corporation for its obligations is primarily contractual and any acquisition of the stock implies assent of the owner to the statutory conditions under which the corporation is organized."

In Allen v. McFerson, 77 Colo., 186, 23 Pac., 346, the Supreme Court of Colorado, in discussing the basis of such liability, said:

"A stockholder of a bank assumes a contractual liability when he becomes a stockholder. The terms of his contract are largely statutory."

The Constitution of Illinois creates a liability against stockholders in banking corporations similar to that in this State. In discussing the nature of this liability the Supreme Court of that State in the case of Golden v. Cervanka, 278 Ill., 409, 116 N. E., 273, said:

"The liability of the stockholders to the creditors, though created by the Constitution, is based upon contract. A person who becomes a stockholder assumes a primary liability to the creditors of the corporation to an amount equal to his stock. He offers to become liable individually to the amount provided by the Constitution and is bound by contract to all persons contracting with the corporation."

In Cochran v. Wiechers, 119 N. Y., 399, 23 N. E., 803, a similar rule is recognized by this declaration:

"Upon becoming the owner of stock he voluntarily assumes the obligation imposed by the statute and the creditors of the corporation who trust it may be said to do so upon the faith of the statute, which is part of the contract. The statutory obligation is inherent in and forms a part of every contract by which the stock of the corporation is acquired."

In Foote v. Anderson, 123 Fed., 659, the Circuit Court of Appeals for the Third Circuit, speaking of the relation of a bank and its stockholders, declare it to be a contractual one. The court describes such relation as follows:

"That relation was a contractual one; if it existed it was created by agreement of both corporation and shareholder. Such contract may be express or implied but it exists only when both parties have expressly consented to its creation, or have so acted that the law

implies consent. It is clear that a corporation by its own act cannot make a shareholder, nor can one make himself a shareholder without the consent of the corporation."

The same principle has been applied by the Supreme Court of the United States in considering the liability of stockholders in National banks. At an early date that court laid down, and has since steadily adhered to this rule. In the case of Richmond v. Irons, 121 U. S., 27, 30 L. Ed., 864, the question was whether the personal liability of a stockholder, in a National bank for the debts of the corporation, survived against his personal representatives. The court in disposing of this question remarked:

"Under that act the individual liability of the stockholder is an essential element in the contract by which the stockholders become members of the corporation. It is voluntarily entered into by subscribing for and accepting shares of stock. Its obligation becomes a part of every contract, debt and engagement of the bank itself as much so as if they were made directly by the stockholders instead of the corporation. There is nothing in the statute to indicate that the obligation arising upon these undertakings and promises should not have the same force and effect and be as binding in all respects as any other contract of the individual stockholder."

In the case of McClaine v. Rankin, 197 U. S., 153, 49 L. Ed., 702, 3 Ann. Cases, 500, Chief Justice Fuller quotes with approval the language of Justice Brown, in McDonald v. Thompson, 184 U. S., 71, 46 L. Ed., 437, as follows:

"Whether the promise raised by the statute was an implied contract, not in writing, or a liability created by statute, it is immaterial to inquire. For the purposes of this case it may have been both. The statute was the origin of both the right and the remedy, *but the contract was the origin of the personal responsibility of the defendant.*" (Italics ours.)

In Chapman v. Thomas, 283 S. W., 337, the Court of Civil Appeals for the Eleventh District, in discussing what constitutes a stockholder in a State bank, said:

"To be liable the appellees must have been stockholders at the time the bank failed. They could only become stockholders by agreement and contract, either express or implied. Under the facts they did not agree to accept this amount of stock and to offer a different or less amount than agreed would not be binding on appellees."

In the case of Turner v. Cattlemen's Trust Co., 215 S. W., 831, Judge Sadler, speaking for the Commission of Appeals, said:

"In order to bring into existence the relationship of stockholder to a corporation, there must be some sort of contract in which the subscriber obtains the right to demand and exercise the privileges of a stockholder." Citing Butler University v. Scoonover, 114 Ind., 381, 16 N. E., 642, 5 Am. St. Rep., 627, 7 R. C. L., 627.

The nature of the stock liability involved in this case seems to have been frequent subject of judicial investigation. The conclusion has been generally reached in harmony with the decisions quoted from, that is, that such liability, though provided for by constitutional or statutory provision, is contractual in nature. Williams v. Cobb, 242 U. S., 307, 61 L. Ed., 325; Christofer v. Norvell, 201 U. S., 216, 50 L. Ed., 732; Platt v. Wilmot, 193 U. S., 602, 48 L. Ed., 809; Matteson v. Dent, 176 U. S., 521, 44 L. Ed., 571; Carrol v. Green, 92 U. S., 509, 23 L. Ed., 738; Flash v. Conn., 109 U. S., 371, 27 L. Ed., 966; Huntington v. Attrill, 146 U. S., 657, 36 L. Ed., 1123; First Natl. Bank v. Hawkins, 174 U. S., 364, 43 L. Ed., 1007; Whitman v. Oxford Bank, 176 U. S., 559, 44 L. Ed., 587; Bank v. Farnum, 176 U. S., 640, 44 L. Ed., 619; Selig v. Hamilton, 234 U. S., 652, 58 L. Ed., 1518; Howarth v. Angle, 162 N. Y., 179, 56 N. E., 489, 47 L. R. A., 725; Corning v. McCullough, 1 N. Y., 47, 49 Am. Dec., 287; Norris v. Wrenschall, 34 Md., 492; Brown v. Hitchcock, 36 Ohio St., 667; Gebhard v. Eastman, 7 Minn., 56; Mining Co. v. Woodbury, 14 Cal., 265; Erickson v. Nesmith, 46 N. H., 371; Fuller v. Ledden, 87 Ill., 310; Wadsworth v. Bowles, 61 Kan., 569, 60 Pac., 334; Adams v. Clark, 36 Colo., 65, 85 Pac., 642; Hill v. Graham, 11 Colo. App., 536, 53 Pac., 1060; Duke v. Olson, 240 Ill. App., 198; McNeill v. Pace, 69 Fla., 349, 68 So., 177; Howarth v. Lombard, 175 Mass., 570, 56 N. E., 888; McDonnell v. Gold Life Ins. Co., 85 Ala., 401, 5 So., 120; Cooper v. Ives, 62 Kan., 395, 63 Pac., 434; Bell v. Farwell, 176 Ill., 489, 52 N. E., 346, 42 L. R. A., 804; Bailey v. Hollister, 26 N. Y., 112; Fish v. Smith, 73 Conn., 377, 47 Atl. 711, 84 Am. St. Rep., 161; Saussey v. Liggett, 75 Fla., 412, 78 So., 334; Hirning v. Hamlin, 200 Iowa, 322, 206 N. W., 617; Hunt v. Reardon, 93 Minn., 375, 101 N. W., 606; Morgan v. Brower, 77 Ga., 634; Gianella v. Bigelow, 96 Wis., 185, 71 N. W., 111; Nimick v. Mingo Iron Works, 25 W. Va., 194; Miller v. Conner, 177 Mo. App., 630, 160 S. W., 582; Van Pelt v. Gardner, 54 Neb., 705, 75 N. W., 874; Foster v. Row, 120 Mich., 1, 79 N. W., 696; Hodges v. Wilming-

ton Ry. Co., 105 N. C., 172, 10 S. E., 918; Barth v. Pock, 51 Mont., 418, 155 Pac., 282; Little v. Kohn, 185 Fed., 301; Witters v. Sowles, 25 Fed., 168; Hayden v. Thompson, 71 Fed., 60; Hutchings v. Lampson, 82 Fed., 960; Hodge v. Cushing, 285 Fed., 158; Deweese v. Smith, 106 Fed., 438, 66 L. R. A., 971; Foote v. Anderson, 123 Fed., 659.

Since the relation of stockholder in a State bank can only be created by contract, express or implied, it necessarily follows that such relation, with its attendant liability, can not be forced upon appellee by operation of the statute of descent and distribution. The statute could only operate to vest such right and title to the bank stock, owned by her husband at the time of his death, as would enable her to become a stockholder in the bank, if she desired to do so. Her husband, in his life-time, was accorded the right of choosing whether he would become a stockholder in this bank. There is no legal basis for denying the wife the same privilege. It has been repeatedly held that even if stock is issued to one with his knowledge, but without his consent, this fact alone does not render him liable as a stockholder. Greene v. Sigua Iron Co., 22 C. C. A., 636, 76 Fed., 947; Carey v. Williams, 25 C. C. A., 227, 79 Fed., 906; Sigua Iron Co. v. Greene, 44 C. C. A., 221, 104 Fed., 856; certiorari denied, 180 U. S., 637, 45 L. Ed., 710; Mudgett v. Horrell, 33 Cal., 25; Girard Life An. & Tr. Co. v. Loving, 71 Kan., 558, 81 Pac., 200, 3 A. L. R., 1049.

It is true the death of appellee's husband brought into operation certain laws affecting her status. The same was not so changed, however, that the law can make for her a contract, imposing burdensome personal liabilities, which she is not desirous of entering into. In so far as the creation of the relation of stockholder to the bank is concerned, her rights are not different from what they were at the time her husband was living. She could not then have been forced to become a stockholder in this bank. She cannot now be compelled to assume such status. The relation cannot be created with her in any other and different way than it could have been during her husband's life-time.

If the relation of a stockholder to a bank can be thus forced upon an heir, without consent, by virtue of operation of the inheritance statute, then it cannot be said that it is in any sense contractual, as one of the essential elements of a contract is the voluntary assent of the parties thereto. When such assent is lacking there can be no

contract. In the absence of a contract, there is no basis for a personal responsibility.

If, at the time of Strong's death, there had been an unpaid balance due the bank on his purchase of this bank stock, in the absence of a voluntary assumption of same by the wife, it would not be seriously contended that she would be personally liable therefor. There can be no substantial difference between the liability for an unpaid balance on a stock subscription, which is an express contract to take stock and pay for it (Stoddard v. Lunn, 159 N. Y., 265, 45 L. R. A., 551, 70 Am. St., 541, 35 N. E., 1108), and the liability for the unpaid deficiency of assets assumed by the act of becoming a member of the corporation through the purchase of stock from which a contract is implied to perform the statutory conditions upon which the stock is owned.

If, in the absence of any showing that appellee agreed, either expressly or impliedly, to assume the liability fixed against stockholders in State banks, she can be made personally liable and her separate property taken to satisfy such liability, then the law on this subject is truly in a deplorable state. Under such construction of the statute any person who, as the result of years of toil and effort, has acquired a competence for himself and family, may awake at any time to find the accumulations of a life-time swept away because of the death of a remote ancestor, of whom he unfortunately happened to be the sole heir, if such ancestor owned a large amount of worthless stock in an insolvent bank. A citizen could be thus pauperized by having his individual property taken without any action whatever upon his part. It would give rise to a danger from which a prospective heir would be helpless to shield himself. He could not keep his ancestor from investing in bank stock nor could he take any action which would prevent the inheritance statute from vesting in him the title to such stock. Neither could he relieve himself of personal responsibility after the death of the ancestor by a sale of the stock, as the statutory liability continues twelve months after sale. He would be in the unfortunate predicament of being unable to do anything to prevent the loss of his personal estate on account of a liability he had done nothing whatever to incur.

In construing a statute, unjust, harsh, and oppressive results should be avoided if possible. It should never be held that the Legislature intended to do an unreasonable thing, unless the language in the statute compels such construction. Railway Co. v. Tod, 94

Texas, 632, 64 S. W., 778; Stone v. Hill, 72 Texas, 540, 10 S. W., 665; State v. Delesdenier, 7 Texas, 105.

When appellee's husband purchased this stock he impliedly contracted to become liable to the extent provided in the law under which such corporation was created. At his death this liability survived like any other debt against the community estate. Under the express provisions of Art. 4616, Rev. Stats., 1925, the separate property of the wife can not be held liable for community debts. Lynch v. Elkes, 21 Texas, 229; Farr v. Wright, 27 Texas, 96; Covington v. Burleson, 28 Texas, 368; Brandenburg v. Norworth, 66 S. W., 587; Hamlett v. Leicht, 187 S. W., 1004. As it affirmatively appears from the findings of the Court of Civil Appeals, the stock in question was never transferred to appellee on the records of the bank, and she never assented to becoming a stockholder in said bank, but continuously from the date of her husband's death renounced any claim to such stock, it must be held she never legally became a stockholder within the contemplation of the statute.

One of the fundamental and inherent rights of a citizen, under our form of government, is that of acquiring and holding property. Conceding that the effect of the law of this state is to force a personal liability of this character upon an heir, which would result in taking his personal estate, without his having expressly or impliedly agreed to assume such burden, it may be seriously questioned whether the operation of the statute, under such interpretation, would not contravene the due process clause of the Constitution of the United States.

The liability of an heir, under facts similar to those of this case, has been frequently held to be limited to the value of the property received by him. In Cook on Corp., Vol. 1, Sec. 4891, it is thus stated:

"The heirs at law of a deceased stockholder are subject to the statutory liability of the ancestor, to the value of the property inherited, where there had been no administration in the State of their residence."

In Cooper v. Ives, 62 Kan., 395, 63 Pac., 434, a similar rule was announced in the use of this language:

"In no event can the inheritor be compelled to pay more than the value of the property."

To the same effect is the holding in Douglass v. Loftus, 85 Kan., 720, 119 Pac., 74, L. R. A., 1915 B, 797, Ann. Cases, 1913 A, 378.

A case directly in point is that of In re: Bingham, 127 N. Y., 296, 27 N. E., 1055. In that case the father was the sole heir of his

son, who died leaving fifty shares of bank stock as a part of his estate. It appeared that the father, shortly after the death of the son, took the stock into his possession, voted it with his other stock, and received such dividends as it produced. The stock, however, was never transferred to him upon the books of the bank. Under this state of facts the court held that the father was not personally liable for the assessment, as his control of the stock and receipt of dividends was consistent with the fact that he was handling the stock in his capacity as administrator of his son's estate. It seems that the holding is predicated, as it should have been, on the ground that the father had done nothing to assert ownership in his individual right and in the absence of such assertion had not contracted or agreed to assume the liability sought to be enforced against him.

So definitely has it been determined that the relation of stockholder, which gives rise to personal liability for the debts of a corporation, is contractual in nature, that it has been held by the Supreme Court of the United States, followed by many other courts, that the repeal of a statute, which makes the stockholders in a corporation liable for the payment of debts, impairs the obligation of a contract, within the meaning of that provision of the Constitution of the United States, which denies the right of a State to pass any law impairing the obligation of a contract. Bernheimer v. Converse, 206 U. S., 516, 51 L. Ed., 1163; Hawthorne v. Calef, 2 Wall., 10, 17 L. Ed., 776; McDonald v. Alabama Gold Life Ins. Co., 85 Ala., 401, 5 So., 120; Howarth v. Lombard, 175 Mass., 570, 56 N. E., 888, 49 L. R. A., 301; Myers v. Knickerbocker, 139 Fed., 111, 1 L. R. A. (N. S.), 1171.

It will be noted that the statute creating the liability against stockholders in banks does not attempt to specially define the term stockholder, hence it must be held that the same was intended to be given its ordinary signification (Railway v. State, 95 Texas, 507, 68 S. W., 777; Tompkins v. McKinney, 93 Texas, 629, 57 S. W., 804; Fristoe v. Blum, 92 Texas, 76, 45 S. W., 998; Stone v. Hill, 72 Texas, 540, 10 S. W., 665), that is, the liability provided therein was only intended to be fixed against persons who had voluntarily so acted as to create the relation of stockholder. There is no language in the statute indicating that the Legislature intended by this enactment to change or any way modify the method by which a person should become a stockholder in a State bank, the evident purpose of the statute being only to fix the liability against persons becoming stockholders, in the manner theretofore defined by the courts. Therefore, in accordance with a familiar rule of construc-

tion, the word stockholder having acquired a definite meaning in law, must be construed in reference thereto. Fire Assn. v. Love, 101 Texas, 376, 108 S. W., 158, 810; Engelking v. Von Wamel, 26 Texas, 469.

It is apparent from the foregoing conclusions that the first and second questions certified should be answered in the negative, which renders an answer unnecessary to the third question.

Opinion of the Commission of Appeals answering certified questions adopted, and ordered certified to the Court of Civil Appeals.

C. M. Cureton, Chief Justice.

## ON MOTION FOR REHEARING.

Mr. Judge LEDDY delivered the opinion of the Commission on appellant's motion for rehearing, which, being referred to the Commission, was overruled, in accordance with its opinion, by the Supreme Court.

In the motion for rehearing appellant concedes the correctness of the holding in the original opinion that appellee is not liable to assessment for the one-half interest in the bank stock passing to her by inheritance from her deceased husband, but asserts that inasmuch as Mrs. Strong was the owner, not by inheritance, but as community survivor, of a one-half interest in such bank stock, she is individually liable for an assessment thereon.

We are unable to agree with this contention. The original subscription for the stock made by appellee's husband was a contract with the bank with reference to the community estate, hence the same was a charge only against that estate.

Strong's purchase on behalf of the community estate of the bank stock did not have the effect, during his life-time, of creating any contractual relation between the bank and his wife. It appears from an unchallenged finding of the trial court that Mrs. Strong has not since the death of her husband entered into any such relation either expressly or impliedly, hence her separate property can not be held liable for an assessment on this stock, as such contract is the basis for personal responsibility.

We recommend that the motion for rehearing be overruled.