Cleghorn vs. The Insurance Bank of Columbus.

No. 61.—CHARLES CLEGHORN, plaintiff in error, *vs.* THE INSURANCE BANK OF COLUMBUS, defendant in error.

[1.] The rule, that the joint estate is to discharge the joint debts in the first place, and the separate estate the separate debts, and that neither can invade the funds of the other until the particular class of debts is satisfied out of its appropriate fund, considered and *questioned*.

[2.] Even admitting the rule as a principle of general equity, it will not be enforced to the exclusion or postponement of the joint creditors, so long as they have recourse *at law* against the separate estate; that is, the equity in favor of the separate creditors will not be allowed to control or take away a right acquired by an execution at law on the part of the joint creditors against the *separate estate*.

[3.] It is only when the legal recourse of the joint creditors against the separate estate is terminated, and they have no claim against those assets, except in Equity, as in the case of the death, bankruptcy, or perhaps statutory assignment in insolvency of a partner, that the joint creditors are postponed.

Motion to distribute money, in Baker Superior Court. Decision by Judge WARREN, December Term, 1850.

A *fi. fa.* controlled by Charles Cleghorn *vs.* Charles L. Bass, James S. Calhoun and others, was levied on the separate property of James S. Calhoun. The proceeds of that levy being in the hands of the Sheriff of Baker County, a rule *nisi* was taken against him to show cause why the same should not be paid over to a *fi. fa.* founded upon an older judgment in favor of the Insurance Bank of Columbus *vs.* Calhoun & Bass, as partners, on which last judgment a return of "*nulla bona*" had been entered.

Upon the return of the Sheriff being made, and argument heard in behalf of both creditors, the Court granted an order requiring the Sheriff to pay the money in hand to the *fi. fa.* in favor of the Insurance Bank.

To this decision Charles Cleghorn, by his counsel, excepted and has assigned error thereon.

R. K. HINES, Jr. for plaintiff in error.

McDOUGALD and CARITHERS, for defendant in error.

Brief of R. K. HINES, Jr.

1. It was a settled rule of Equity, before the passage of our Statutes, that copartnership debts should be first satisfied out of the copartnership assets, and private debts had the same preference as to the separate property. 2 *P. Williams*, 500. 3 *Vesey, Jr.* 240. 9 *Vesey, Jr.* 124. 14 *Vesey, Jr.* 447. *Gow on Part.* 314. *Collyer on Part.* 520, '21. 3 *Kent's Com.* 64, '5. *Story on Part.* §§363, 376. *Story's Eq. Jur.* 675. 6 *Paige*, 20. 1 *Amer. Leading Cases*, 310. 3 *Paige*, 527. 2 *McCord*, 301.

Cases of above, where there was no joint property. 14 *Vesey, Jr.* 447. *Story on Part.* §363. 3 *Paige.* 171 *to* 174. 9 *Vesey*, 124. 1 *American Leading Cases*, 310.

2. Our Statute (1820) only regulates the practice as to serving co-contractors and co-partners, but did not alter the equities between partnership and separate creditors; and had that been the intention, inasfar as it deviated from its title for that purpose, is unconstitutional. *Prince,* 445.

3. Our Judiciary Act makes a Judgment bind all of the property of defendant from its date; but this does not alter the rule in Equity, that as he has two funds, he should resort to that one on which others have no claims, or the rule of Law, requiring him to show there is no solvent partner.

4. The equities of the case be looked into on motion to distribute money. *Winter vs. Garrard,* 7 *Ga. Rep.* 185.

*By the Court.*—LUMPKIN, J. delivering the opinion.

The Insurance Bank of Columbus, holding an execution against the firm of Calhoun & Bass, which firm was composed of James S. Calhoun and Charles L. Bass, moved a rule against James G. Johnston, Sheriff of Baker County, to show cause why he should not pay over to the plaintiffs, certain money in his hands, arising from the sale of the property of James S. Calhoun, one of the defendants. The Sheriff, in return to said rule, showed that a *fi. fa.* from Muscogee Superior Court, of William Foster *vs.* Charles L. Bass, James S. Calhoun and others, and transferred to Charles Cleghorn, was placed in his hands by R. K. Hines, Jr. as attorney for the assignee, with direction to levy the same upon certain lots of land in said County; that in pursuance of said instructions, he levied upon and sold said lots as the individual property of James S. Calhoun; and that, after deducting costs, it left in his hands the sum of $233, subject to the order of the Court.

Upon this answer and argument had thereon, Judge Warren determined that the fund should be paid over to the execution in favor of the Insurance Bank, it having the oldest judgment lien, and there being a return of *nulla bona* thereon as to any joint property. To which opinion counsel for Cleghorn excepted.

[1.] The conflicting claims of copartnership and separate

creditors have been a fruitful source of litigation, both in England and in this country. The main point of contestation is, whether the rule, that joint creditors have a primary claim upon the joint estate, and only the surplus goes to the separate creditors, and *vice versa* as to separate creditors and separate estate, is a general rule in Equity, or restricted to cases of bankruptcy and founded upon the Statutes of Bankruptcy? I forbear to inquire into the origin of this rule, or to trace its history and fluctuations since its introduction.

Chancellor *Kent* declares that he feels no hostility to the doctrine, even as a general rule of Equity, and thinks that it is, upon the whole, reasonable and just. *To doubt*, under such circumstances, might well expose one to the charge of temerity, were it not that the rule has been discarded, after great consideration, by many of the Courts of this country, as well as by the ablest transatlantic jurists. *Ex parte Hayden*, 1 *Bro. C. C.* 454. *Ex parte Hodgson*, 2 *Bro. C. C.* 5. *Ex parte Copland*, 1 *Cox*, 420. *Ex parte Page, Ib.* 119. *Lodge vs. Fendall*, 1 *Ves. Jr.* 196. *Ex parte Bauerman & Christie*, 3 *Deacon*, 476, 484. *Bell vs. Newman*, 5 *Serg. & Rawle*, 78. *In the matter of the estate of Perry*, 1 *Ashmead*, 347. *Reed vs. Shepherdson*, 2 *Vermont Rep.* 120. *White vs. Dougherty et al. Martin & Yerger*, 309, 321. *Grosvenor & Co. vs. Austin's adm'r*, 6 *Ohio*, 103. *Dahlgren vs. Duncan et al.* 7 *Smede & Marshall*, 280.

Lord *Eldon*, in *Barker vs. Goodan*, (11 *Ves.* 786,) stated that this rule was practiced upon in Chancery every day, but admitted that he did not know how it became law. He remarked that they had in some degree pursued it in the administration of assets, *though very tenderly*. And Judge *Story* admits, also, that the rule rests on as questionable and unsatisfactory a foundation as any in the whole system of our jurisprudence, but concludes that it had best not be overthrown, as it would be difficult to substitute any other that would work with perfect equality and equity. *Story on Partnership*, 530, 541. The learned commentator concedes, however, that if the true doctrine be that avowed by Sir William *Grant*, in the case of *Devaynes vs. Noble*, (1 *Meriv.* 529,) and afterwards affirmed by Lord *Brougham*, (2 *Russ. &*

*Mylne*, 494,) that a partnership contract is several as well as joint, then there seems no ground to make any difference whatsoever in any case between joint and several creditors as to payment out of joint or separate assets. 1 *Story's Eq. Jur.* 626, *notes.*

In *Tuckers vs. Oxley*, (5 *Cranch*, 35,) Judge *Marshall* considered that even in bankruptcy, the rule when properly understood, was nothing more than the equitable principle of compelling the joint creditors, as having two funds, to exhaust the fund which was appropriated to them before coming upon the fund to which the separate creditors were also entitled.

Now, I can very well understand why the rule should be maintained upon the principle of two funds, whenever the facts will justify its application; that is, if there were partnership effects in this case, which had not been exhausted, it might be equitable to force the joint creditors to proceed first against these partnership effects; or, if Cleghorn's *fi. fa.* was against Calhoun only —that of the Insurance Bank being against Calhoun & Bass— Chancery would interfere and compel the latter to go against Bass, provided he was solvent. But where, as in the present case, the partnership is insolvent, and where the claim of the separate creditor is against each of the joint debtors, I should be exceedingly reluctant to recognize a rule which was adopted as one of convenience merely, and which excludes a creditor of the partnership from all share of the separate estates of the partners until the separate debts are paid, or which would, on the other hand, exclude a separate creditor from all share of his debtor's joint property until the joint debts are paid.

On the delivery of this opinion, and before I had had an opportunity of consulting any of the American authorities, I ventured the opinion that the rule under discussion was founded upon a basis radically unsound, namely: that the funds are to be liable on which the credit was given—that in contracting with a partnership, the credit is supposed to be given to the firm; but those who deal with an individual member, rely on his sufficiency. I insisted that we trusted everybody for what he is supposed to be worth; and I am gratified to discover that Chief Justice *Tilgh-*

*man* in *Bell vs. Newman,* took the same view of this subject. He says, " The truth is, that persons who trust the partners, either in their separate or partnership character, generally do it on the credit of their *whole estate, both joint and separate.*"   " When men," he continues, " enter into partnership, they often borrow money on their private accounts for the very purpose of creating partnership stock; and this they may continue to do during the partnership.   And on the other hand, the individuals of a partnership often withdraw money from the joint stock and convert it to separate property, in such a manner that it cannot be traced or identified.   In such cases," he adds, "it is evident that this rule in bankruptcy works cruel injustice."

That such a rule should have been *yielded to,* (for it appears never to have been firmly established,) in a country where the bankrupt system has been " *in full blast*" ever since the reign of Henry the Eighth, is not surprising.   It saves a vast amount of trouble in settling intricate accounts between partners in the disposition of the bankrupt's estate; but, as a new question, the rule never could have obtained in a country like ours.

[2.] But conceding the rule to be settled as contended for, and the weight of authority, if not of justice, is perhaps in its favor, especially in Chancery adjudications in Britain before the revolution ; and grant, moreover that it is applicable not only in bankruptcy, but upon general equity ;

There is another feature in this case which withdraws it from its operation.   It is in a Court of Equity only that the joint creditor can be restrained from proceeding against the separate estate.   The equity in favor of the separate creditors will never be enforced to control or take away a right acquired by legal execution on the part of joint creditors against the separate estate.

[3.] And it is only when the legal recourse of the joint creditor against the separate estate is terminated, and they have no claim against these assets, except in Equity, as in case of the death, bankruptcy (or perhaps statutory assignment in insolvency) of a partner, that the joint creditors are postponed.   And this is agreed to be law even in those Courts which recognize the rule I have

been considering as a principle of general equity. 1 *Amer.*
*Lead. Cases,* 325. *Allen vs. Wells,* 22 *Pick. R.* 455. 1 *Har. &*
*Gill,* 96. 1 *Stor. Eq. Jur.* 625.

Inasmuch, then, as the Insurance Bank is not invoking the aid
of Equity to inforce its lien, but is asserting in a Court of Law
its legal rights against the legal estate of one of the partners,
there is no reason why its judgment lien should be excluded or
postponed in behalf of the separate creditors. We consequently
hold that the rule, as applicable to the facts and circumstances
of this case, was correctly stated by the presiding Judge on the
circuit.

Judgment affirmed.