## JACOB C. HIGGINS *v.* JOHN B. RECTOR, ADM'R.

1. PARTNERSHIP—CREDITOR.—The holder of a claim against a partnership has a legal right to have his claim established against the estate of the deceased partner, and in the ordinary course of administration, his claim will be paid *pari passu* with other claims of the same class, without regard to the distinction between partnership and individual claims.

2. SAME—EQUITY.—When a joint creditor has to resort to equity to reach the estate of the survivor, a court of equity will seek to secure equality amongst the creditors. But equity does not interfere with legal rights, even for the purpose of producing equality.

3. SAME—EQUITY.—Where there is no partnership fund, and no solvent partner, the separate creditor is entitled to no preference, even when the assets are equitable.

APPEAL from Bastrop. Tried below before the Hon. Henry Maney.

J. B. Rector, as administrator of R. H. Grimes, deceased, in his annual report of 1873, asked directions of the court below as to the manner of the distribution of the estate among the creditors. Jacob C. Higgins, a separate creditor, moved that it be ordered that the funds in the hands of the

administrators, arising from the individual assets of decedent, R. H. Grimes, be applied, first, to the payment of the claims of the separate creditors of Grimes; then, if anything remained, to the payment of the partnership debts. The court overruled the motion, and ordered that the firm and separate creditors be paid *pro rata* out of the individual estate, which ruling was assigned as error, and presented the only question for the consideration of this court.

*B. S. Moore* and *N. G. Shelley*, for appellant.—If it is to the partnership property that firm creditors, in the first instance, look for the payment of their debts; if that was the fund that they credited, (and certainly that is the fund which their credit tends to increase, in the judgment of the partners,) the joint fund was first to be benefited only mediately; by drawing, after payment of debts, each one's quota of the increase, would their individual estates be augmented? Kent (3 Comm., 65) says, "the basis of the general rule is, that the funds are to be liable on which the credit was given,"—if this, I say, is the basis of their claim to priority, they ought to be preferred; for it is the individual estate that the separate creditor benefited, and not the joint estate. Now, so long as joint and private estates are solvent, neither set of creditors can complain, no matter from which fund the debts are paid. But when the firm breaks, then the joint creditors would have cause to complain. It would be an injustice that the firm assets should be applied to the payment of individual debts. No longer is there a necessity for an untrammeled control of the business. The object for which the partnership was created—mutual profit—has failed. The business of the concern now is the payment of its debts; and the partners, as honest men, should apply what remains to those, the joint creditors, to whom it really belongs, and each, as honest men, would feel it equally his duty to pay his private debts out of his private estate; then, if there was a surplus, in connection with the other partners, to turn it over to the joint

creditors.    Our conscience approves this course, and the cred-
itors, following the golden rule, could not complain.

But honesty is not a universal virtue.    The courts must be
resorted to.    Should there be a different rule there?    The
cases of Burtus v. Tisdall, 4 Barb., 571; Jackson v. Cornell,
1 Sanford, ch. 348; Morrison v. Blodgett, 8 N. H., 250;
Collins v. Hood, 4 McLean, 185; French v. Lovejoy, 12 N.
H., 458; Benson v. Ella, 4 Fogg, 482; Ferson v. Monroe, 1
Foster, 462; Jarvis v. Brooks, 3 Foster, 136, substantially
decide that the separate assets constitute the fund for the
payment of the separate debts, and the joint for the joint;
and an application in any other manner, to the injury of the
respective claimants, is a fraud.    We are aware that there
are other cases that do not go so far, that hold that it is neces-
sary for the creditor to have a judgment before he can com-
plain, but still a priority is recognized.

*Carleton & Robertson,* for appellee, cited Lindley on the
Law of Partnership, 405, marginal page; 1 Tudor's Lead.
Cases, (London ed,) 386; 2 Lead. Cases in Eq., 223; Dahl-
green v. Duncan, 7 Sm. & Marsh. Rep., 280.

*H. McLester,* also for appellee.

GOULD, ASSOCIATE JUSTICE.—Under our laws and system,
there can be no question that the holder of a claim against a
partnership has a legal right to have his claim established
against the estate of the deceased partner, and that in the
ordinary course of administration his claim will be paid *pari
passu* with other claims of the same class, without regard to
the distinction between partnership and individual debts.
Certainly this ordinary and legal course of procedure will
not be interrupted so as to give a preference to the holder of
a separate or individual claim, unless it be made to appear
that equity requires such a course.    Where the joint creditor
had to resort to equity to reach the estate of the survivor,

the courts of equity would seek to secure equality amongst the creditors. But equity does not interfere with legal rights, even for the purpose of producing equality. (1 Am. Lead. Cases, 587, and ref.; 2 Lead. Cases in Eq., 315, and references.)

If, indeed, the joint creditor, having a right to resort to two funds, attempts to use his legal rights against the separate estate in a way to cause unnecessary prejudice to the separate creditors, then the latter may have an equitable right to relief. (Id.)

But the current of authority seems to be that where there is no partnership fund, and no solvent partner, the separate creditor is entitled to no preference, even where the assets are equitable. Parsons, who, in his work on partnership, advocates the rule that the joint creditors shall be confined to the joint fund, says: "This rule can apply only where there are matters to which it can apply, as where there are joint debts and joint funds, and also several debts and several funds. It is, therefore, not an exception to the rule, where there is no joint estate, or no living solvent partner, or where there are no separate debts. These cases, which are sometimes called exceptions to the rule, should rather be thought to fall without the rule." (Page 500, [483;] see also 1 Am. Lead. Cases, 588, [481;] Emmanuel v. Bird, 19 Ala., 593; Bardwell v. Perry, 19 Vt., 292; Sperry's Est., 1 Ash., (Pa.,) 347; Ladd v. Griswold, 4 Gilm., (Ill.,) 25; Cleghorn v. Insurance Bank of Columbus, 9 Ga., 319; Rodgers v. Meronda, 7 Ohio St., 179; 5 Cranch, 35; Story on Part., sec. 363; Collyer on Part., sec. 584.)

Such, it is said, is the well-settled rule in England. (2 Lead. Cas. in Eq., p. 323, and references.)

In this case it is agreed that there is no partnership fund, and there is nothing in the record to show that there has been any such fund since the death of Grimes.

Testing the action of the court by the rules which prevail in courts of equity, both as to when they will interfere with

legal rights and as to how they will distribute equitable assets, we think that the order made was correct.

The position, that the separate creditor has in equity a right to be first paid out of the separate assets, is not one that commands our assent, and is not, in our opinion, the prevailing doctrine. Such being our views of the rule in equity, we do not feel called on in this case to decide whether, under our statutes, the established order for the payment of claims may be interfered with, for equitable reasons, or not. It will be time enough to dispose of that question when a separate or partnership creditor shall present a case which requires it.

The judgment is affirmed.

AFFIRMED.