SHAW, Banking Com'r, et al. v. GREEN.

No. 8295.

Court of Civil Appeals of Texas. San Antonio.
January 8, 1930.

Rehearing Granted April 23, 1930.

Rehearing Overruled July 9, 1930.

Spencer, Rogers & Lewis, of San Antonio, for appellants.

H. W. Wallace, of Cuero, for appellee.

COBBS, J.

Appellant, James Shaw, banking commissioner of Texas, brought this suit against William D. Green, independent executor, et al., to recover $11,000 on account of stock assessments made against the defendants by the banking commissioner in the matter of the liquidation of the First State Bank of Westhoff, in DeWitt county, Tex.

In his original petition plaintiff alleged, among other things, that:

(a) The said First State Bank of Westhoff was a state banking corporation, organized and existing under the laws of the state of Texas.

(b) On the 5th day of September, A. D. 1928, the said bank, having become insolvent, was closed and placed in the hands of the plaintiff as banking commissioner of Texas for the purpose of liquidation.

(c) After taking charge of the assets and affairs of the bank, he, as banking commissioner of Texas, having first ascertained and found that the institution was insolvent and had been insolvent for more than twelve months prior to the time it was closed, made and levied a 100 per cent. assessment against each stockholder of said bank at the time it failed, and a like assessment against those stockholders who had transferred stock therein within twelve months prior to the failure of the bank.

(d) Within the twelve-month period the defendant firm of Green & Welhausen, being the registered owner of record of 110 shares of the capital stock of said bank, of the par value of $11,000, transferred one hundred shares of the said stock to the defendant firm of Welhausen & Driscoll, and that, at the time of the transfer of said shares of stock, there existed debts of said bank largely in excess of the par value of the shares so transferred, and that the said debts remain unpaid.

(e) That the defendants were duly notified of the assessment made against them, and the additional allegation that no part of said assessment had been paid.

The defendant, William D. Green, as independent executor of the estate of William Green, deceased, answered by:

(a) General demurrer;

(b) General denial;

(c) Special denial, under oath, to the effect that there was no partnership relation existing between William Green and Philip Welhausen at the time or times mentioned in plaintiff's petition, and he also denied the existence of a partnership between the defendant, William D. Green, either as an individual or as executor with said Philip Welhausen; and

(d) by special answer in which he set up that William Green died on the 10th day of May, A. D. 1927; and he also pleaded therein a sale of the stock from William Green to M. C. Driscoll under a certain contract executed between William Green and M. C. Driscoll on July 9, 1924.

Neither Philip Welhausen, as surviving member of the firm of Green & Welhausen, nor the firm of Welhausen & Driscoll, answered or appeared, although both were duly and legally cited in the manner and for the time required by law.

Plaintiff replied to the defendant executor's answer by a supplemental petition, in which he pleaded estoppel against the defendants on the ground that the said stock stood on the books of the bank in the name of the defendants as they were sued, and that such facts were known to the defendants and each of them, and that they should, therefore, not be heard as against such creditors of the bank who became such while the defendants appeared as the record owners and holders of the stock, to assert or claim any prior and unrecorded sale or transfer of the stock.

A jury was waived by both parties, and the case was tried before the court. After the trial the court entered a judgment in favor of the banking commissioner against the firm of Welhausen & Driscoll for the sum of $10,000. The decree also gave the banking commissioner a judgment against William D. Green as independent executor of the estate of William Green, deceased, for the principal sum of $5,500, but denied any relief against the said Philip Welhausen as surviving member of the partnership firm of Green & Welhausen. To that portion of the decree giving the commissioner a judgment against the estate of William Green, the defendant William D. Green, as independent executor of said estate, excepted and gave notice of appeal. To that portion

of the decree denying plaintiff full recovery against the firm of Green & Welhausen and William D. Green, independent executor of the estate of William Green, deceased, and Philip Welhausen, as surviving member of the firm of Green & Welhausen, plaintiff, in open court, duly excepted and gave notice of appeal to the Court of Civil Appeals, First Supreme Judicial District of Texas, at Galveston, and the cause was transferred from that court to this.

The following facts were agreed to by counsel for both parties:

"1. That First State Bank of Westhoff was a state banking corporation organized under the laws of the State of Texas, with its place of business in Westhoff, DeWitt County, Texas, with a capital of twenty-five thousand ($25,000.00) dollars, divided into 250 shares of the par value of $100.00 per share.

"2. That on the 13th day of March, 1912, 127 shares of the original issue of the capital stock of said bank was issued to and received by Green and Welhausen by William Green, the same being evidenced by Certificates No. 6 to 18, inclusive, all for 10 shares each, excepting Certificate No. 18, which was for 7 shares; that on said last named date Certificate No. 4 for 10 shares of the capital stock of said bank was issued to and received by William Green, and on said date Certificate No. 5 for 10 shares was issued to and received by Philip Welhausen.

"3. That on or about the 1st day of July, 1919, the said First State Bank of Westhoff declared and paid a twelve (12) per cent dividend to all of its stockholders of record; that on July 2nd, 1919, Green and Welhausen was paid the sum of $1764.00 on account of said dividend; that in the month of April, of the year 1920, a ten (10) per cent dividend was declared and paid and the sum of $147.00 credited to the deposit account of Green and Welhausen.

"4. That during the month of April of the year 1921, the capital stock of the said First State Bank of Westhoff was increased to $35,000.00, and that from this increase of capital fifty-nine (59) shares were issued to and received by Green and Welhausen, the same being represented by Certificates Nos. 33 to 37, inclusive, the first four for 10 shares each, and the last mentioned certificate for 9 shares, and by certificate No. 45 for 10 shares.

"5. And it is further agreed that during the month of January of the year 1923 another ten (10) per cent dividend was declared and paid by said bank to all of its stockholders of record on the increased capitalization; that the account of Green and Welhausen was credited with the sum of $2060.00 on account of said dividend; that in the month of January of the year 1924, an eight (8) per cent dividend was paid to all stockholders and Green and Welhausen received credit for $1648.00 on account of said dividend.

"6. That on December 4th, 1926, Green and Welhausen transferred 96 shares of the above mentioned stock, the same being represented by Certificates Nos. 15 to 18, inclusive, the first three being for $1000.00 each, and the last one being for $700.00, and by Certificates Nos. 33, 34, 35, 36 and 45 for 10 shares each, and Certificate No. 37 for 9 shares.

"7. That on the 18th day of November, 1927, Certificate No. 4 for 10 shares in the name of William Green was transferred to M. C. Driscoll; that on April 20th, 1928, Certificate Nos. 6 to 14, inclusive, for 10 shares each, in the name of Green and Welhausen, were transferred to Philip Welhausen and M. C. Driscoll, the former receiving 45 shares, the same represented by Certificates Nos. 72, 74 and 75 for 10 shares each, and Certificate No. 76 for 15 shares, the latter receiving 45 shares in the form of Certificate No. 77, 78 and 79 for 10 shares each, and Certificate No. 80 for 15 shares, these facts being evidenced by and appear on the stock books of said bank.

"8. That on the 8th day of September, A. D. 1928, the said First State Bank of Westhoff, being insolvent, was closed and taken in charge by this plaintiff, in his official capacity, for the purpose of liquidation; that said Commissioner thereafter levied an assessment of 100 per cent of the par value of the stock of said bank against each and every stockholder owning stock therein at the time said bank failed, and against each and every stockholder of said bank who had transferred stock therein within twelve months prior to the closing thereof; he having first determined and found that at the time said 10 shares of stock in the name of William Green and said 90 shares in the name of Green and Welhausen were transferred, to-wit on the 18th day of November, A. D. 1927, and 23rd day of April, A. D. 1928, respectively, there existed debts of said bank largely in excess of the par value of the said 100 shares of stock so transferred, and some of said debts remain unpaid, but defendant Green does not admit that said bank was insolvent on April 23, 1928, or in the month of April, 1928, or on the 18th day of November, 1927, or in November, 1927."

The evidence showed by a written instrument, dated July 9, 1924, William Green conveyed all the stock in controversy, together with land and other property of great value, to M. C. Driscoll. The stock was in the possession of the Shiner Bank. The following provision appears in the sales agreement:

"7. After all of the obligations of Green & Welhausen, aggregating approximately $273,500.00 have been refinanced, substituted,

or assumed in a way that is satisfactory to all parties concerned, and *William Green is relieved of any further liability for said obligations*, the First National Bank of Shiner is empowered and authorized to deliver all stock certificates, deeds and notes, and all papers of any kind to M. C. Driscoll.

"8. It is agreed and understood that said William Green is to pay taxes for the year 1924 on the property reconveyed to him and listed in Article 2, Item (B), and the said M. C. Driscoll is to pay William Green's portion of the 1924 taxes on all that property purchased by Driscoll. Said M. C. Driscoll is also to pay any and all income tax if any accruing to the partnership for the year 1924, and to pay said William Green's portion of any back taxes and bank income taxes owing by the partnership, or on partnership income."

William Green died May 10, 1927, and his son William D. Green was appointed and qualified as executor. All stocks were put in escrow in Shiner Bank with the exception of 100 shares, 90 of which were pledged to S. L. Green and 10 shares of which were in the possession of Philip Welhausen. The stock was taken out of escrow in November or December, 1926.

Within six months the purchaser had relieved William Green of liability to the extent of over $200,000, pursuant to the contract, so that in November and December, 1926, all the stock was take from the bank and delivered to Driscoll on the books of the various corporations, except the 90 shares in the First State Bank of Westhoff, then held as collateral.

After the death of William Green, his son, his executor, made a further additional agreement providing certain methods of extension of time and securities for the consideration. There is no provision for the retention of title or for reverter to Green in case of default. Nor was there any specified time for performance by Driscoll. It is clear that Green, on account of age, was desirous of being relieved of liability and obligations for the debts of the firm. It required Driscoll to pay the taxes, and for delivery of stock to Driscoll from time to time in refinancing the obligations of the former firm of Green & Welhausen.

The instrument was an outright sale of the partnership property and clearly a dissolution thereof. The bank held the stock more as an agent or trustee than in escrow and as security to William Green. Driscoll at once took the burden of complying with the contract, and within six months had relieved William Green of over $200,000 of liabilities, and after the death of William Green his executor completed the transaction with Driscoll.

There can be no question but by the transaction William Green sold his interest in the property in the firm of Green & Welhausen, and, by his contract and deposit of said deed, stocks, and notes in the bank, freed himself from any further liability thereupon.

After the sale by William Green to Driscoll in 1924, there is no evidence that he transacted any further partnership affairs or dealings as a copartner. Lapenta v. Lettieri, 72 Conn. 377, 44 A. 730, 77 Am. St. Rep. 315. Ninety shares of the stock were held by Sam L. Green of Houston, as collateral for an item of Green & Welhausen's indebtedness, which Driscoll, under his said contract, was obligated to retire. It was not, however, done until the spring of 1928. At that time there was no partnership between them, which was generally known to have been dissolved four years before the bank was closed. The court found that the sale was bona fide, and the proof sustains it.

The estate of Green is not in any way shown to be estopped from showing the dissolution of the firm four years before the bank's failure. The record fails to show any creditor of the bank entitled to set up any such estoppel.

There was no evidence offered tending to show that there was any property of the former firm of Green & Welhausen remaining as the property of said former firm at the time the suit was filed, or at the time the bank became insolvent, or at any time after the death of William Green in May, 1927, or after he sold his interest in the firm to Driscoll in July, 1924, except the fact that the books of the bank showed "Green & Welhausen" to have 90 shares of the stock of the bank, according to its books, up to April 20, 1928. The certificates for said 90 shares had been indorsed "Green & Welhausen" and pledged to S. L. Green, of Houston, Tex., prior to July 9, 1924, and he held the same as collateral security until just before the transfer of said 90 shares, 45 shares to Welhausen, and 45 shares to Driscoll, on the books of the bank, on April 20, 1928.

■ We do not think there is any question but what a partnership as an individual may own stock in a bank, and as such liable to an assessment, and we shall not look to the common law for such holding. State banks are the subject of our own Constitution and laws.

■ The essence of partnership is agency, and one partner is the agent of the other and becomes individually liable for the debts of the firm. Austin v. Strong, 117 Tex. 263, 1 S.W.(2d) 872, 3 S.W.(2d) 425.

■ The firm of Green & Welhausen was not a shareholder on September 8, 1927, for there was no such firm. The firm had formerly been a shareholder. It parted with

its stock when the new firm of Welhausen & Driscoll was created, at all events when Green died. The plaintiff did not attempt to show, and there is no claim, that the bank was insolvent "so long as" the firm of Green & Welhausen were shareholders. If upon the date the firm transferred its stock, by going out of existence or otherwise, the bank had been insolvent, then under the Constitution and laws of partnership the Green estate might have been held liable for the assessment upon the entire 90 shares. But as "debts" (Pool v. Chapman [Tex. Com. App.] 283 S. W. 762) did not exist when the partnership terminated, the responsibility of Green, as a partner, superadded by the law of partnership, likewise terminated by the very wording of the Constitution.

The court concluded as a matter of law that appellee, executor, was liable on the assessment for $1,000 on account of the 10 shares transferred on the books of the bank November 18, 1927, and for $4,500, or one-half the assessment on the 90 shares transferred on the books of the bank on April 20, 1928, and gave judgment against appellee for $5,500.

During Mr. Green's life there is not a suggestion of the insolvency of the bank. His sale was in solido and there is nothing to justify the separation of the 90 shares, part of the 206 shares which Green sold in 1924. A part of the consideration of the sale was that Driscoll was assuming Green's obligations, this being one of them. Green's property interest in the 90 shares so collaterally held passed to Driscoll in 1924. That firm, prior to the sale by Green, owned 206 shares in said bank, and Green sold all of his interest therein more than four years before the bank failed. The purchaser, Driscoll, became a director in the bank. There is no evidence that Mr. Green had anything to do with the First State Bank of Westhoff after 1924. Of the 206 shares involved in the sale, 10 shares were in the name of Green, 10 shares in the name of Welhausen, and 186 shares in the name of Green & Welhausen. Ninety-six of these shares were transferred on the books of the bank on December 4, 1926. The 10 shares in the name of William Green were transferred on the books of the bank on November 18, 1927, and the remaining 90 shares of the Green & Welhausen stock were transferred on the books of the bank on April 30, 1928.

■ The bank commissioner was legally empowered to make the assessment to compel stockholders to pay on such stock as they held on the date when the bank was closed and for twelve months prior thereto.

We do not think, under the facts shown in this case, that the appellee was subject thereto, for the reasons stated.

This case seems fully developed, and there is no good reason for reversing the judgment and sending the cause back for another trial. The judgment is reversed, and judgment here rendered that appellant take nothing herein and pay the costs.

Reversed and rendered in favor of appellee.

On Motion for Rehearing.

SMITH, J.

■■ Under our Constitution and statutes, as construed by the courts, record owners of the capital stock of a state bank at the time of or within twelve months next preceding the closing of such bank on account of its insolvency are liable upon assessment by the state banking commissioner for double the amount of the par value of such stock. This is the rule even though such stockholders of record do not in fact actually own the stock standing in their name upon the books of the bank, although the actual owners of such stock would be primarily liable upon such assessment. Chapman v. Pettus (Tex. Civ. App.) 269 S. W. 268; Heldenfels v. Chapman (Tex. Civ. App.) 283 S. W. 179. In adjudicating the relative liabilities of the actual and apparent owners of such stock, therefore, it is necessary to ascertain and determine the classification into which the respective parties fall.

■■ In this case the partnership firm of Green & Welhausen owned 110 shares of the capital stock of the Westhoff Bank on July 9, 1924, on which date William D. Green, one of the parties, entered into an executory contract to convey his partnership interest in said 110 shares to M. C. Driscoll. No transfer of this interest in said stock was made upon the bank's books, however, until after the bank became insolvent, and until within twelve months next preceding the closing of the bank. If the executory contract for the sale of Green's interest in the stock to Driscoll had not been performed by the beginning of the twelve-month period, then the firm of Green & Welhausen, and the individual partners therein, were liable primarily upon said assessment because of actual ownership thereof, and secondarily because the stock stood in the firm's name on the bank's books. If said executory contract had been fully performed and said sale actually consummated, then the liability of Green, as a partner, upon said assessment was only secondary.

It therefore becomes important, in fact essential to a correct disposition of this case, to know whether said contract had been fully performed and said sale from Green to Driscoll fully consummated prior to the beginning of said twelve-month period. That is a question of fact which should have been determined by the trial court, in view of the state of the evidence. The trial court, however, declined to resolve that issue upon the trial, and this action has been assigned as error by the banking commissioner. We sustain the assignment.

A majority of the court have concluded that appellant's motion for rehearing must be granted, and the judgment reversed, and the cause remanded. It is so ordered.