JAMES SHAW, BANKING COMMISSIONER, v. WILLIAM D. GREEN, INDEPENDENT EXECUTOR.

No. 6716.   Decided January 6, 1937.
Rehearing overruled February 10, 1937.
(99 S. W., 2d Series, 889.)

*R. F. Spencer* and *A. J. Lewis,* both of San Antonio, for appellant.

An executory contract does not pass title to property until all conditions necessary of performance have been complied with. First Natl. Bank of Littlefield v. Neel, 10 S. W. (2d) 408; Turnbull v. Payson, 95 U. S., 418; Malone v. Dawson, 117 Texas, 377, 5 S. W. (2d) 965.

A partnership and the individual members thereof are estopped from denying their joint and several liability for bank stock, where same has not been transferred on the books of the bank prior to twelve months before the dissolution of said bank. Austin v. Duffer, 279 S. W., 318; Pauly v. State Loan & Tr. Co., 165 U. S., 606, 41 L. Ed., 359; Kenyon v. Fowler, 215 U. S., 593, 30 Sup. Ct., 409, 54 L. Ed., 341; Austin v. Gamble, 297 S. W., 806.

The estate of a deceased bank stockholder is liable for the assessments against it. Gau v. Reed, 24 Texas, 46, 76 Am. Dec. 94; Fowler Com. Co. v. Land, 248 S. W., 314; Brooks v. Austin, 206 S. W., 723 (writ refused).

*H. W. Wallace,* of Cuero, for appellee.

Where stock appears upon the books of a corporation as being owned by two or more persons, without stating the nature of their ownership, they will be regarded as tenants in common, each holding an undivided interest, and their liability is in proportion thereto. Glasscock v. Price, 92 Texas, 271, 47 S. W., 965; Payne v. Livingston, 253 S. W., 701.

The assessment by the Banking Commission against stock

alleged to be owned by a firm, were never the debts of the firm, when the same was dissolved more than twelve months before the bank became insolvent. Shaw v. Hailey, 46 S. W. (2d) 724; Furr v. Chapman, 286 S. W., 171.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals for the First District has certified four questions in a suit brought by the Banking Commissioner of Texas against William D. Green as independent executor of the estate of William Green, deceased, for the recovery of a one hundred per cent assessment upon one hundred shares of the capital stock of First State Bank of Westhoff. The material facts found by the trial court and by the Court of Civil Appeals, as stated in the certificate, are in substance as follows: William Green and Philip Welhausen were the members of a partnership engaged in business under the firm name, Green and Welhausen. On March 13, 1912, the partnership became the owner ·of one hundred shares of the capital stock of First State Bank of Westhoff, which was incorporated under the general banking laws of the State of Texas. Certificates for ninety shares were issued to Green and Welhausen and for ten shares to William Green, and entries were made in the stock books and records of the bank showing the ninety shares to be owned by Green and Welhausen and the ten shares by William Green.

The records of the bank continued to show the ownership of the one hundred shares of stock as above stated until the ten shares, which stood in the name of William Green were, on November 18, 1927, transferred on the books of the bank to M. C. Driscoll and the ninety shares, which stood in the name of the partnership, Green and Welhausen, were on April 20, 1928, transferred on the books of the bank, forty-five shares to Philip Welhausen and forty-five shares to M. C. Driscoll. The by-laws of the bank provided that the stock should be transferable only on the books of the bank and that upon transfer the existing certificate should be surrendered and cancelled and a new certificate issued.

On September 8, 1928, the bank was closed by the board of directors and placed in the hands of the Banking Commissioner of Texas for liquidation. It was insolvent on that date and for more than twelve months immediately prior thereto. The Commissioner levied an assessment against all stockholders of the bank owning stock therein, as shown by the books and records of the bank at the time it closed, and against those stockholders

who had transferred stock therein within twelve months prior to said closing date, in amount equal to one hundred per cent of the par value so owned or transferred.

On July 9, 1924, William Green by written contract agreed to sell to M. C. Driscoll his interest in a large amount of real and personal property owned by the partnership, Green and Welhausen, including the one hundred shares of stock in the Westhoff bank. This contract was fully executed on August 23, 1924. Written assignment was made of the shares of stock and the partnership was dissolved, but no transfer of the stock was made on the records of the bank, and no request was made that it be transferred, until November 18, 1927, and April 20, 1928, as above stated.

William Green died May 10, 1927, all of his property passing by the terms of his will subject to the payment of existing debts. The Westhoff bank at the time of the death of William Green owed no debts that it could not pay. The four questions certified are as follows:

"1. After the death of Wm. D. Green, could any stock owned by the partnership firm of Green & Welhausen be held subject to assessment as stock owned by the partnership, which became non-existent on the death of Green, so as to make the estate of Green liable for the assessment made upon the interest of his surviving partner in the stock so assessed?

"2. Were the debts for the payment of which the assessment sued on was made debts of the firm of Green & Welhausen, which firm is shown by the fact findings of the trial court to have been dissolved by the sale by Green of all of his interest in the partnership more than four years before the failure of the bank and notice of such sale published at the time, and given the bank directly more than two years before its failure?

"3. Can appellee executor, upon the facts before shown, be held estopped from denying his liability for the assessment made by appellant on the stock originally owned by the firm of Green & Welhausen merely because no transfer of the stock was made on the books of the bank twelve months prior to the bank's failure?

"4. Can the Estate of Green, upon the facts before shown, be held liable for any debt of the bank not existing at the date of Green's transfer to Driscoll, which occurred about four years prior to the failure of the bank?"

Article 535 of the Revised Civil Statutes of 1925, prior to its amendment in 1929 (Chapter 60, Acts First Called Session 41st Legislature, p. 159), by its terms imposed the added liability

upon each stockholder of a bank only so long as he owned shares therein and for twelve months after the date of the transfer thereof and did not provide that shares of stock in a banking corporation should be transferable only on the books. It is apparent that if the question as to liability of William Green's estate for the assessment made were determined by actual ownership of the stock by Green or by the partnership, Green and Welhausen, or by Green's estate, there would be no liability, for Green disposed of all ownership and interest in the stock and in the other partnership assets on August 23, 1924, four years before the failure of the bank and nearly three years before his death.

Other important controlling facts, however, are the provision of the by-laws of the bank that the stock should be transferable only on the bank's books and the fact that the records of the bank showed ten shares of the stock to be owned by William Green until November 18, 1927, when they were transferred on the books to M. C. Driscoll, and ninety shares to be owned by Green and Welhausen until April 20, 1928, when they were transferred on the books to Philip Welhausen and M. C. Driscoll. Both of these transfers were made within the twelve months immediately prior to the closing of the bank on September 8, 1928.

■ It is well settled by the decisions in this State, in cases arising prior to the amendment of Article 535 in 1929, that when the by-laws of the bank provide that the stock is transferable only on the books of the bank, the banking commissioner may enforce the stockholder's liability under that article of the statutes against one who, though not a real owner, allows the stock to stand in his name on the books of the bank. Fuqua v. Shaw, 119 Texas, 325, 29 S. W. (2d) 319; Pace v. Shaw (Com. App.), 29 S. W. (2d) 965; Chapman v. Pettus, 269 S. W., 268 (application for writ of error refused); Heldenfels v. Chapman, 283 S. W., 179; Chapman v. Sparks, 283 S. W., 338; Orndorff v. Austin, 294 S. W., 681; 6 Tex. Jur., Secs. 38, 39, pp. 168-169. These decisions are in harmony with the general rule, "that the transfer of stock by a shareholder in a corporation does not relieve him of liability to creditors of the corporation for unpaid subscriptions or statutory superadded liability until the transfer is perfected by being registered on the books of the corporation." Note 45 A. L. R., p. 139 and authorities cited. See also: 3 R. C. L., p. 399, Sec. 28; Michie on Banks and Banking, Sec. 41, Vol. 2, p. 121. The reason for the rule has often

been stated in substance to be that the requirement made by statute or by-law that transfer be made only on the books of the corporation is particularly for the benefit of creditors of the bank, giving them the right by inspection of the books to ascertain who are the stockholders and thus determine the financial strength and responsibility of the bank. The one in whose name the stock stands on the records of the bank is regarded as the legal owner.

■■ Article 535 makes the stockholder liable for an additional amount equal to the par value of his stock "as long as he owns shares therein and for twelve months after the date of the transfer thereof." The transfer here referred to is a transfer on the books of the bank when, by statute or by by-law, the stock is transferable only on the books. "The period of liability of the stockholder is determined by the date of the formal transfer of his stock upon the books of the bank." Chapman v. Sparks, 283 S. W., 338, 340. The stockholder is relieved of liability, notwithstanding the fact that the transfer is not entered on the books of the bank, when he has done all that is legally required of him in order to have the transfer made of record. Chapman v. Beeman, 265 S. W., 243; Chapman v. Sparks, 283 S. W., 338; 6 Tex. Jur., Sec. 42, p. 172; 3 R. C. L., Sec. 34, p. 406; Note 45, A. L. R., pp. 144-145. This exception to the general rule has no application in the instant case, because it appears from the certificate that no steps were taken to procure the transfer of the stock of record prior to the dates when the transfers were actually made on the books.

Since the transfers of record were made within twelve months before the closing of the bank (and construing the certificate to mean that sufficient proof was made of the insolvency of the bank at the time the transfers were made: Pool v. Chapman (Com. App.), 283 S. W., 762; Austin v. Poole, 299 S. W. 935), the estate of William Green is liable for the assessments made against the owner of the one hundred shares of stock, unless a different conclusion is warranted by the partnership's ownership of the stock or by the dissolution of the partnership or by Green's death.

■ The one hundred shares of stock were acquired and owned by the partnership composed of William Green and Philip Welhausen, engaged in business under the firm name of Green and Welhausen, ninety shares being issued to and in the name of the partnership and ten shares being issued in the name of William Green, and the stock was carried in such names on the

records of the bank. When the stock was thus voluntarily acquired by the partnership as a partnership asset the contingent statutory liability which rested upon the stock and attended its ownership was voluntarily assumed, becoming a partnership liability for which each partner was individually liable. Shaw v. McMillan, 24 S. W. (2d) 536. A partner is not relieved of his individual responsibility by the sale of his interest in the partnership assets; and after his death his estate is liable for the partnership obligations. Higgins v. Rector, 47 Texas, 361, 20 R. C. L., Secs. 215, 216, pp. 981-982, Sec. 227, p. 991; 32 Tex. Jur., Sec. 206, pp. 535-536. While it has been held that after the death of one of two partners the partnership assets are owned in undivided interests, one half by the surviving partner and the other by the estate of the deceased partner (Gay v. Jackman (Com. App.), 254 S. W., 927, 929), dissolution of the partnership by death neither releases nor divides partnership obligations. If the statutory liability accrues prior to the stockholder's death, it is not extinguished by the death but continues against the estate. Richmond v. Irons, 121 U. S., 27, 7 Sup. Ct., 788, 30 L. Ed., 864; Note 79, A. L. R., pp. 1538-1539; Michie on Banks and Banking, 1936 Supp., Vol. 2, p. 129, Sec. 45½. If the liability accrues after the stockholder's death and while the stock is owned by the estate, assets of the estate in the hands of the executor or administrator are liable for the assessment in like manner and to the same extent as the decedent would have been. Art. 537, R. S., 1925; Austin v. Strong, 117 Texas, 263, 274, 1 S. W. (2d) 872, 3 S. W. (2d) 425, 79 A. L. R., 1528; Saur v. South Texas Bank & Trust Co., 85 S. W. (2d) 265; Matteson v. Dent, 176 U. S., 521, 20 Sup. Ct., 419, 44 L. Ed., 571; Note 79, A. L. R., pp. 1542-1550.

■ In accordance with the rules announced in the foregoing paragraph, the estate of William Green would have been liable upon the assessment by reason of actual ownership of the one hundred shares of stock by the partnership, Green and Welhausen, if actual ownership by that partnership had continued until a time within twelve months prior to the closing of the bank. This being true, the estate is liable by reason of the continuance, until a time within such twelve months period, of the apparent ownership of the stock by the partnership, as shown by the books of the bank. This appears to be an extreme case on account of its peculiar facts, particularly the sale by Green of his interest in the partnership property four years before the date on which the bank was closed and his death

about sixteen months before that date. But such facts do not justify a relaxation of the rule which makes record ownership of the stock, in the determination of the rights of the bank's creditors, the same in legal effect as actual ownership; and they cannot change the reasonable construction of the words, "twelve months after the date of the transfer thereof" used in Article 535, as having reference to the date of the formal transfer of record, when, by by-law or by the amendment of the statute, the stock is transferable only on the books.

■ The stock was acquired by and for the partnership, the statutory added liability, although contingent, becoming by reason of such acquisition and ownership of the stock, a partnership liability. The records of the bank were caused to show, and were permitted by Green, and by the executor after Green's death, to continue to show, ownership of ten shares of the stock by Green and of ninety shares by Green and Welhausen, the name in which the partnership business was conducted. Creditors of the bank, seeking to determine from its books its financial stability, would be justified in looking to the individual responsibility of William Green to an amount equal to the par value of the ten shares and to the individual responsibilities of William Green and Philip Welhausen to amounts equal to the par value of the ninety shares. The accomplishment of the purposes of the statute and the by-laws requires that the executor of the estate be held to the same duty to cause the transfers to be made of record as that which rested upon William Green.

■ There are apparent conflicts in the decisions as to the nature of the stockholder's added liability, whether it is to be considered contractual or statutory. See: Austin v. Strong, 117 Texas, 263, 268, 1 S. W. (2d) 872, 3 S. W. (2d) 425, 79 A. L. R., 1528; Austin v. Guaranty State Bank of Fulbright, 282 S. W., 262; Orndorff v. Austin, 294 S. W., 681; Richmond v. Irons, 121 U. S., 27, 7 Sup. Ct., 788, 30 L. Ed., 864; Matteson v. Dent, 176 U. S., 521, 20 Sup. Ct., 419, 44 L. Ed., 571; McClaine v. Rankin, 199 U S., 154, 25 Sup. Ct., 410, 49 L. Ed., 702, 3 Am. Cas., 500; Christopher v. Norvell, 201 U. S., 216, 26 Sup. Ct., 502, 50 L. Ed., 732, 5 Am. Cas., 740; Thomas v. Matthiessen, 232 U. S., 221, 34 Sup. Ct., 312, 58 L. Ed., 577; 3 R. C. L., Sec. 37, pp. 410-411. The liability is neither wholly contractual nor wholly statutory. The relation of the stockholder to the bank, as pointed out by Judge Leddy in Austin v. Strong, supra, is contractual in its nature. Until that relation is once created, with the voluntary assent of the party, he does not become individually

responsible for any of the bank's debts. As to him it may be said that his liability has its origin in the contract by which he becomes a stockholder. However, the liability to which he binds himself by becoming a stockholder is created or imposed by the Constitution (Art. 16, Sec. 16) and the statute. As said by Justice Harlan in Christopher v. Norvell, supra, without the statute the stockholder could not be made individually liable for the debts of the bank. He further said: "Her liability for the debts of the bank is created by the statute, although in a limited sense there is an element of contract in her having become a shareholder; and the right of the receiver to maintain this action depends upon, and has its sanction in, the statute creating liability against each shareholder, in whatever way he may have become such." A conclusion that the liability is either wholly contractual or wholly statutory is not essential to the disposition of the case. If the liability is viewed as contractual, the assessment made against the owner of the ninety shares becomes by virtue of contract a liability of Green's estate, because when he and Welhausen acquired the stock as an asset of their partnership they thereby contracted that they and each of them would be personally liable for debts of the bank, to an amount equal to the par value of the shares, as long as the partnership owned the stock and for twelve months after transfer thereof on the books of the bank. If the liability is viewed as statutory, then it was by the terms of the statute imposed upon the partnership when it became the owner of the stock (and upon the individual members of the partnership, the stock upon which the liability rested being a partnership asset); and the liability so imposed continued, according to the terms of the statute, until twelve months after the date of the transfer of the stock, which could be made only on the books of the bank. The liability of the estate for the assessment made against the owner of the ten shares which, though belonging to the partnership, stood on the records in the name of William Green, follows from actual ownership by the partnership and the continued apparent ownership by Green. The conclusions expressed herein as to the liability of William Green, and of his estate, for the assessment are the same as those concisely stated by Justice Smith in the opinion on rehearing in a former appeal of this case. 29 S. W. (2d) 819, 822.

Each of the four questions certified is answered in the affirmative, with the following qualifications or explanations, which seem to be made necessary by the form of the questions.

■ The assessment was not made, as is suggested by the first question, against the partnership as the actual owner of the stock. It was made against all stockholders, as shown by the books and records of the bank, and against those stockholders who had transferred stock within twelve months prior to the closing of the bank. The ownership of the stock by the partnership, Green and Welhausen, was shown by the books and records of the bank and the transfer of the stock of record was made within twelve months before the bank closed. In explanation of the affirmative answers to the second and fourth questions, we add that, although the debts for which the assessment was made probably were not in existence before the partnership, Green and Welhausen, was dissolved, and they cannot be said ever to have been actually debts of the partnership during its existence, the partnership was, prior to its dissolution, the actual and record owner of the stock, and it was such record owner until the stock was transferred to Welhausen and Driscoll on April 20, 1928, about five months before the bank was closed. Thus the records of the bank, until the transfer was made on the books, reflected the apparent ownership of the stock by the partnership, Green and Welhausen, and the statute imposed upon the estate of Green, who was a member of that partnership, liability for debts of the bank existing at the date of such transfer. To the answer to the third question should be added the statement that the executor is not personally liable for the assessment. The liability is that of the estate.

Opinion adopted by the Supreme Court January 6, 1937.

Rehearing overruled February 10, 1937.