Z. Gossett, Banking Commissioner, v. F. Seggerman.

No. 7289.   Decided January 5, 1938.
(111 S. W., 2d Series, 685.)

*Mead & Metcalf,* of Marfa, and *Ocie Speer,* of Austin, for plaintiff in error.

The defendant knowingly consented to and acquiesced in the bank's carrying his name upon its books as a shareholder and permitted himself to be held out to the public as a shareholder in such bank and is therefore estopped from denying such share ownership and is incidentally liable, and the judgments of the

lower courts should be reversed and rendered. Cases cited in the opinion.

*Paul D. Thomas* and *William Flournoy,* of El Paso, for defendant in error.

The evidence showing that the shares of stock registered in the name of defendant were not really his, but had been placed in his name in order that he might qualify as a director of said bank, he was not liable to assessment upon the shares so transferred to him. Chapman v. Penix, 274 S. W. 187; Austin v. Marsico, 281 S. W. 198; 3 Tex. Jur. 1011.

MR. JUSTICE SHARP delivered the opinion of the Court.

The controlling question presented for decision here is whether or not, under pertinent provisions of the Constitution and statutes as they existed at the time the events involved in this case occurred, one who purposely held himself out to the public as a stockholder in a bank incorporated under the laws of this State, or permitted the bank to so hold him out to the public, could deny that he was such stockholder, and thus defeat his legal liability for an assessment against him, as a stockholder of the bank, for the insolvency of such bank.

This is a stock assessment suit, brought for the benefit of the creditors of the Presidio Valley Bank, by Z. Gossett, the Banking Commissioner of Texas, against F. Seggerman, as a stockholder in the Presidio Valley Bank, the bank having failed and being in the hands of the Commissioner for liquidation. The defendant answered, pleading specially that he was not the owner of the shares of stock, but that he had accepted the same, at the solicitation of the president and other officers of the bank, only for the purpose of qualifying himself to act as a director. Plaintiff replied with a plea of estoppel, in that he had actually accepted the shares of stock, had receipted therefor, and had actually exercised the rights of a stockholder and director; and, furthermore, had knowingly permitted himself to be held out to the public on the books of the bank as a stockholder therein. The case was tried before the court without a jury, and judgment was rendered for the defendant. The Court of Civil Appeals affirmed the judgment of the trial court. 105 S. W. (2d) 421.

The Banking Commissioner contends that the undisputed evidence shows that Seggerman knowingly consented to and acquiesced in the Presidio Valley Bank's carrying his name on its books as the owner of shares therein, and thus holding him out to the public as a shareholder of such bank, and that by reason

of such acts he became liable as such shareholder, and is estopped thereby to deny his stock ownership. On the other hand, Seggerman claims that he never was the real owner of any shares in the bank, and that the shares registered in his name were merely transferred to him in order that he might qualify as a director, to act for the convenience of the bank, and that under such circumstances he was not liable to assessment upon the shares of stock so transferred to him.

The undisputed evidence shows that Seggerman, the defendant, knowingly and purposely consented to and acquiesced in the Presidio Valley Bank's carrying his name on its books as the owner of ten shares of stock therein, and thus holding him out to the public as a stockholder in such bank. It is further shown by the record that he acted as a director for several months, and attended directors' meetings and participated therein; that he swore that he was a director, and attested, as such director, reports issued by the bank showing its financial condition. The record also shows that defendant receipted for the shares of stock, and that he was elected a director of the bank and executed his acceptance thereof, swearing to the same. The bank had an authorized capital stock of two hundred shares, of the par value of $100.00 each, all fully subscribed and paid as of October 14, 1929. The bank closed and went into the hands of the Banking Commissioner for liquidation on November 18, 1935. The Banking Commissioner duly levied and assessed a shareholders' stock assessment in an amount equal to the par value of shares held. The defendant, claiming that he was not the actual owner of the shares of stock, refused to pay the assessment. Hence this suit for $1,000.00, with lawful interest thereon from December 9, 1935.

■ Banks occupy an important position in our business affairs, and, whether organized under the Federal or State laws, are subject to supervision and control. Title 12, Sections 21 to 213, U. S. Code Annotated; Article 16, Section 16, State Constitution; and Title 16, Chapters 1 to 9, inclusive, Revised Civil Statutes of Texas.

The Presidio Valley Bank was a creature of our State laws. Banks organized under our statutes are placed under the supervision of the Banking Commissioner. Articles 356 and 358, Revised Civil Statutes of Texas.

Since this cause of action arose, the law relating to assessment of stockholders in State banks has been changed. An amendment to Section 16 of Article 16 of the Constitution was adopted on August 23, 1937. Also, the Legislature in 1937 amended Articles 535 and 380, and repealed Article 455, of the Revised

Civil Statutes. See S. B. 158, adopted by the Regular Session of the 45th Legislature.

The old provisions of the Constitution and statutes control this case. The old Section 16 of Article 16 of the Constitution in part read:

"Sec. 16. The Legislature shall by general laws, authorize the incorporation of corporate bodies with banking and discounting privileges, and shall provide for a system of State supervision, regulation and control of such bodies which will adequately protect and secure the depositors and creditors thereof.

"Each shareholder of such corporate body incorporated in this State, so long as he owns shares therein, and for twelve months after the date of any bona fide transfer thereof shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred."

Article 535 of the Revised Civil Statutes, as amended by Acts 1929, 1st Called Session, Chapter 60, Section 1, reads as follows:

"If default shall be made in the payment of any debt or liability contracted by any bank, savings bank or bank and trust company, each stockholder of such corporation, as long as he owns shares therein, and for twelve months after the date of the transfer thereof, shall be personally liable for all debts of such corporation existing at the date of such transfer, or at the date of such default, to an additional amount equal to the par value of such shares. Shares of stock in such a banking corporation shall be transferable only on the books of the corporation, and it shall be the duty of the officers of the corporation to make such transfer upon the books at the request of the transferor or transferee. In any suit to establish a stockholder's liability on any obligation as stockholder, the transferor and transferee of stock may be joined in one action and the liabilities of both parties determined therein."

■ While the purpose of the law was to hold liable for an assessment the real owner of the stock, yet where one who was not the real owner of the stock held himself out as such, by allowing the stock to stand in his name as owner on the books of the bank, liability may be enforced against both the real and apparent owners, jointly or severally. Fuqua v. Shaw, 119 Texas 325, 29 S. W. (2d) 319; Rankin v. Fidelity Trust Co., 189 U. S. 246, 23 Sup. Ct. 553, 47 L. Ed. 792; Pauly v. State Loan & Trust

Co., 165 U. S. 606, 17 Sup. Ct. 465, 41 L. Ed. 844; Bank v. Case, 99 U. S. 631, 25 L. Ed. 448; Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571; 3 R. C. L., p. 399; 7 C. J. 769.

The great weight of authority supports the general rule that any person who held himself out as the owner of shares, by allowing himself to appear as the registered owner thereof on the books of a bank, may be treated as a stockholder. Shaw v. Green, 128 Texas 596, 99 S. W. (2d) 889; Fuqua v. Shaw, 119 Texas 325, 29 S. W. (2d) 319; Pace v. Shaw, (Tex. Com. App.) 29 S. W. (2d) 965; Chapman v. Pettus, (Tex. Civ. App.) 269 S. W. 268 (application for writ of error refused); Heldenfels v. Chapman, (Tex. Civ. App.) 283 S. W. 179; Chapman v. Sparks, (Tex. Civ. App.) 283 S. W. 338; Orndorff v. Austin, (Tex. Civ. App.) 294 S. W. 681; 6 Texas Jurisprudence, Secs. 38, 39, pp. 168, 169; Rankin v. Fidelity Ins., etc., Co., 189 U. S. 242, 23 Sup. Ct. 553, 47 L. Ed. 792; Pauly v. State L. & T. Co., 165 U. S. 606, 17 Sup. Ct. 465, 41 L. Ed. 844; Finn v. Brown, 142 U. S. 56, 12 Sup. Ct. 136, 35 L. Ed. 936; Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290, 33 L. Ed. 531; Anderson v. Philadelphia Warehouse Co., 111 U. S. 479, 4 Sup. Ct. 525, 28 L. Ed. 478; Turnbull v. Payson, 95 U. S. 418, 24 L. Ed. 437; 7 C. J., Sec. 608, p. 769, and notes; 7 American Jurisprudence, Sec. 82, p. 70, and notes.

In Michie on Banks and Banking, Vol. 2, Sec. 41, p. 121, it is said:

"As a general rule, in all cases between the creditors of a bank and a person standing on the books of the bank as a shareholder, such person is estopped from denying that he is a shareholder; certainly where he held himself out to the creditors of the bank as owning stock. But the conclusive liability of the record holders of stock does not absolve the actual holders."

In Zollman on Banks and Banking, Vol. 3, Sec. 1681, the rule is stated in the following language:

"Bank stockholders of record are liable to assessment on the superadded liability for debts existing at the bank's failure, particularly where they take some action which is inconsistent with their claim that they are not stockholders, such as executing a proxy to vote their stock, acting as director or officer, accepting and cashing dividend checks, participating in an application to have the bank converted into a national bank, transferring the stock to another or in blank, or lending the use of their names to the sole stockholder."

Books of banks are open for the inspection of creditors, in order that the financial strength of the corporations may be ascertained. The creditors had a right to rely on what the bank books contained. The books disclosed that Seggerman permitted his name to be listed on the bank books as a stockholder, and allowed himself to be elected as a director. The liability fixed against Seggerman by reason of his acts could not be nullified by some side agreement or contract entered into between him and Mrs. Millington.

Article 535 of the Revised Civil Statutes before its amendment authorized a suit against both transferor and transferee in one action, and the liability of both parties to be determined therein. The Banking Commissioner filed this suit against both Seggerman and Mrs. W. T. Millington, and the equities existing between them by reason of the transfer of such stock could have been adjudicated in this cause. Seggerman did not seek relief against Mrs. Millington, who he claims was the real owner of the stock, and she was dismissed from the suit without objection from him. As between him and Mrs. Millington, he may have been only the apparent owner of the stock, and she the real owner; but he was held out to the public as the real owner of the stock, and acted as if he were the real owner, and he did not seek to adjust the equities that might have existed in his favor against Mrs. Millington, the real owner. But with this phase of the case we are not concerned here.

■ The question of Seggerman's estoppel to claim that he was the apparent, and not the real, owner of the stock was pointedly raised and presented for decision. Seggerman saw fit to stand or fall upon the proposition that he was only the apparent owner of the stock, and therefore was not liable for the assessment. He permitted himself to be held out to the public on the books of the bank as a stockholder, and performed the duties of a director while it was a going concern; and after the bank failed and was placed in the hands of the Banking Commissioner for liquidation, his claim that he was not the real owner of the stock came too late to avoid the assessment made against him as such stockholder. As to the rights of the creditors of the bank, he had by his own acts effectively estopped himself from making such claim. If a stockholder under such a state of facts could evade the doctrine of estoppel, and escape liability as a stockholder, then the wholesome purposes of the law would be defeated. In our judgment, there can be no question but that Seggerman, under the undisputed facts contained in this record, estopped himself from claiming that he was not liable for the assessment made by the Banking Commissioner against him.

476

The Court of Civil Appeals, on the authority of Shaw v. Hailey, (Tex. Civ. App.) 46 S. W. (2d) 724, held that Seggerman was not estopped to deny his status as a shareholder under the facts presented. The case just cited sustains its holding. That case did not reach this Court, and the rule announced therein has not been approved by this Court. We do not think that the rule expressed in that case, and followed by the Court of Civil Appeals in this case, is sound; and, furthermore, it is in conflict with the great weight of authority. Such rule is hereby overruled.

The judgments of the trial court and the Court of Civil Appeals are both reversed, and judgment is rendered here in favor of the Banking Commissioner against Seggerman for the sum of $1,000.00, the amount of the assessment levied against him as such stockholder in the Presidio Valley Bank, together with interest thereon from December 9, 1935, at the rate of six per cent. per annum.

Opinion delivered January 5, 1938.