CHAPMAN, Banking Commissioner of Texas,
v. BEEMAN.    (No. 2959.)

(Court of Civil Appeals of Texas. Texarkana.
July 5, 1924. Rehearing Denied
Oct. 9, 1924.)

1. Banks and banking ⊂⊃48(1)—Rule requiring sellers of stock to strictly comply with regulations is based on estoppel.

Rule holding stockholders disposing of their stock to strict compliance with regulations prescribing method of making transfers to avoid liability to creditors is based on principle of estoppel.

2. Estoppel ⊂⊃52—Estoppel in pais applies only when party against whom it is invoked has failed to do duty to prevent deception.

Estoppel in pais applies only when party against whom it is invoked has failed to do that which is his duty to do to prevent deception.

3. Banks and banking ⊂⊃48(1)—Where shareholder has not culpably neglected duty respecting record of transfer of stock, there is no basis for estoppel.

Where seller of bank stock has not culpably neglected or failed to do what was legally required of him in order to have transfer entered of record, there is no basis for estoppel.

4. Banks and banking ⊂⊃48(1)—Stockholder who delivered certificates showing their assignment for cancellation held not liable to creditors.

Under Const. art. 16, § 16, and Rev. St. arts. 459 and 552, stockholder in bank who delivered certificates which showed their assignment, to officers of bank for cancellation, *held* not liable to creditors, though officers failed to record' transfer on corporation's books.

Appeal from Fannin County Court; Sam E. Neilson, Judge.

Action by J. L. Chapman, Banking Commissioner of Texas, against A. M. Beeman. Judgment for defendant, and plaintiff appeals. Affirmed.

Hawkins, Hawkins & David, of Breckenridge, for appellant.

Wheeler & Leslie, of Bonham, for appellee.

HODGES, J   This is a suit by the commissioner of banking to enforce the statutory liability of a stockholder for the debts of an insolvent state bank. On November 4, 1921, the Texas Bank & Trust Company of Ranger became insolvent and was taken over by the commissioner of insurance and banking. In winding up the affairs of the bank, that officer assessed the stockholders 100 per cent. of the par value of their stock: Among those whose names appeared on the books of the bank as a stockholder was that of Beeman, the appellee. He received a notice

of the assessment, but refused payment upon the ground that he had sold and transferred his stock more than twelve months before the failure of the bank. In a trial before the court a judgment was rendered against the commissioner. The contention on this appeal is that under the admitted facts a judgment should have been rendered in his favor.

The books of the bank showed that at the time of the failure Beeman was the owner of five shares of stock, of the par value of $100 each. He testified that more than twelve months before the failure he sold those shares of stock to M. H. Smith, who was then the president of the insolvent bank and trust company. He indorsed the stock certificates, and told both Smith and Chenoweth, the acting vice president, to have the transfer made on the books of the bank, and they agreed to do so. Soon after that date he severed his relations with the bank and did not have any further connection with its affairs. Smith assumed and had the general charge and control of the books of the bank, and its management after this stock sale. Beeman further testified that Smith paid him part cash and partly in notes for the stock; that the notes were afterwards assigned to other parties. That testimony was not disputed by any other witness.

Conceding the truth of that testimony, the question arises: Is Beeman now liable under the statute as a shareholder? Section 16 of article 16 of the Constitution contains the following provision:

"Each shareholder of such corporate body incorporated in this state, so long as he owns shares therein, and for twelve months after the date of any bona fide transfer thereof, shall be personally liable for all debts of such corporate body existing at the date of such transfer, to an amount additional to the par value of such shares so owned or transferred, equal to the par value of such shares so owned or transferred."

Article 552 of the Revised Civil Statutes is a substantial re-enactment of the above provision. Article 459 of the Revised Civil Statutes authorizes the commissioner, when necessary to pay the debts of an insolvent bank, to enforce the liability imposed by the Constitution. The by-laws in existence at the time Beeman transferred his stock contained the following provision:

"The stock of this bank shall be transferable only upon the books of the bank, and no transfer shall be made or certificate of stock issued until the certificate or certificates for the stock intended to be transferred shall have been delivered to the bank and canceled."

The provision of our Constitution and statutes with reference to the liability of stockholders of state banks is somewhat sim-

ilar to those found in the acts of Congress imposing the same character of liability on stockholders of national banks. The rule applied under the national banking law is thus stated by the Supreme Court of the United States in Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571:

"The settled doctrine is that, as a general rule, the legal owner of stock of a national banking association—that is, the one in whose name stock stands on the books of the association—remains liable for an assessment so long as the stock is allowed to stand in his name on the books, and, consequently, that although the registered owner may have made a transfer to another person, unless it has been accompanied by a transfer on the books of registry of the association, such registered owner remains liable."

The same court, in Whitney v. Butler, Receiver, 118 U. S. 655, 7 Sup. Ct. 61, 30 L. Ed. 266, after reviewing a number of cases in which that general rule is announced, says:

"But it will be found, upon careful examination, that in no one of the cases in which these general principles have been announced, as between creditors and shareholders, does it appear that the precaution was taken, after the sale of the stock, to surrender the certificates therefor to the bank itself, accompanied (where such surrender was not by the shareholder in person) by a power of attorney, which would enable its officers to make the transfer on the register. The position of the seller, in such case, is analogous to that of a grantor of a deed deposited in the proper office to be recorded. The general rule is, that the deed is considered as recorded from the time of such deposit. 2 Washburn on Real Prop., B. 3, ch. 4, par. 52. Where the seller delivers the stock certificate and power of attorney to the buyer, relying upon the promise of the latter to have the necessary transfer made, or where the certificate and power of attorney are delivered to the bank without communicating to its officers the name of the buyer, the seller may well be held liable as a shareholder until, at least, he shall have done all that he reasonably can do to effect a transfer on the stock register."

In referring to the conduct of the parties sought to be held liable in the case then under consideration, the court said:

"They did all that was required by either as preliminary to such transfer. Nothing remained to be done except for some officer of the bank to make the necessary formal entries on its books. If, when the agents of defendants delivered the certificates and power of attorney to the president of the bank, the latter had given any intimation of a purpose not to make the transfer promptly, or had avowed an intention to postpone action until a sufficient amount of stock was obtained to fill Coburn's order, it may be that the failure of the defendants to take legal steps to compel a transfer would, in favor of the creditors of the bank, have been deemed a waiver of the right to an immediate transfer on the stock register. But no such intimation was given; no such avowal was made."

In that case the parties sought to be held liable were exonerated, notwithstanding the books showed no transfer of the stock formerly owned by them.

[1-3] It is apparent that the rule which holds stockholders disposing of their shares of stock to a strict compliance with the regulations prescribing the method of making transfers is based upon the principle of estoppel. Presumably those who extend credit to a bank do so, partly, at least, upon the solvency and financial standing of its shareholders; and the records of the corporation are expected to furnish a correct list of those shareholders. But the principle of estoppel in pais applies only when the party against whom it is invoked has failed to do that which it was his duty to do in order to prevent a deception. If there has been no culpable neglect or failure on the part of the selling shareholder to do what is legally required of him in order to have the transfer entered of record as required by the by-laws of the corporation, there is no basis for an estoppel.

[4] We think the language of the Supreme Court in Whitney v. Butler, supra, is applicable to the facts of this case. It appears that Beeman had done all that was required of him as a seller of stock to complete the transfer. He had indorsed the old certificates, showing their assignment, and had delivered them to the proper officers for cancellation. Those officers were familiar with the essential facts, and agreed to make the required book entries showing the changed ownership. The things that remained undone were those which the officers only could do. If Beeman's testimony is true, he had no notice that the bank officials had failed to do their duty until after the bank failed.

Counsel for appellant contend that the peculiar character of the by-laws of the Texas Bank & Trust Company distinguished this case from those before the federal Supreme Court. They seem to attach special significance to the words of the by-law which provide that the old certificates must be canceled before the new certificates are issued. Those provisions are not materially different from the by-laws under consideration in Whitney v. Butler. What difference there may be in the terms used is not sufficient to take this case out of the principle of law there announced. The chronological order of the physical acts required to be done by a bookkeeper in order to complete a transfer in that case is practically the same as in this instance. In a legal sense, the cancellation of the old certificates and the issuance of the new, the two acts required to mark the passage of the title from the vendor to the vendee, are inseparable and practically synchronous. Where both are parts

of one transaction, it is immaterial which precedes the other.

The judgment will be affirmed.