### CARTER v. BRAND, Banking Com'r.
### No. 8448.

Court of Civil Appeals of Texas. Austin.
May 19, 1937.

Rehearing Denied June 9, 1937.

Clyde Vinson, of San Angelo, for appellant.

Carter & Stiernberg, of Harlington, and D. I. Durham, of San Angelo, for appellee.

BAUGH, Justice.

The Banking Commissioner brought this suit in the district court of Hidalgo county to recover a 100 per cent. assessment on 20 shares of stock, of the par value of $100 each, in the Security State Bank of Weslaco, Tex., shown on the books of said bank to be owned by appellant at the time the bank was placed in the hands of the commissioner for liquidation on January 18, 1933. The case was transferred upon plea of privilege to the district court of Tom Green county, where it was tried to the court without a jury and judgment rendered in favor of appellee against ap-

pellant; hence this appeal. The trial court found that appellant had never in fact owned said stock, but held him liable to assessment under article 535, R.S.1925, as amended by Acts 1929, 1st Called Sess., c. 60, § 1 (Vernon's Ann.Civ.St. art. 535), on the ground of estoppel.

The defenses made, and the facts shown, were as follows: In July, 1932, W. C. Steffins was a large stockholder in the McAllen State Bank and in the Security State Bank of Weslaco. At that time Carter was a collector for the McAllen bank, and was then employed to serve as a collector for the Weslaco bank, dividing his time and efforts between the two banks. In order to enable him to more efficiently do so, Steffins, with the knowledge and approval of the officers of the Weslaco bank, transferred and delivered to Carter 20 shares of his stock in that bank, and the stock was entered on the books of the bank in Carter's name. Carter was elected a director of the Weslaco bank, served as such, and acted as a collector therefor until he resigned both positions on October 8, 1932. Carter never paid anything for the stock transferred to him by Steffins, and it was agreed at the time that if and when he severed his connection with said bank, he was to retransfer the stock to Steffins, and to have such retransfer made on the books of the bank. At the time of his resignation he did reassign this stock to Steffins, and deliver such reassignment and stock certificates to the vice president of the Weslaco bank, with instructions to the latter to enter such transfer on the books of the bank. Carter thereupon left that section of the state, but the officer so directed failed to enter such transfer on the books of the bank, and same still appeared on its books in his name at the time the bank closed because of insolvency on January 18, 1933, more than three months thereafter.

■ Appellant's first contention is that he never owned any stock in said bank; that ownership is the sine qua non of liability to assessment; and that under the undisputed facts and the findings of the trial court he was entitled to judgment in his favor. This contention is not sustained. Numerous cases are cited and reviewed, and while there may have formerly been some confusion on this question, it is now conclusively settled adversely to appellant's contention. Ownership in fact is not the

sole test of liability to assessment in such cases. In Fuqua v. Shaw, Banking Com'r, 119 Tex. 325, 29 S.W.(2d) 319, 321, in answering certified questions, the Supreme Court say: "Subject to certain exceptions, none of which is applicable to this case, the liability imposed on the stockholder by this statute attaches to the real owner of the stock and to one who, though not the real owner, holds himself out as such by allowing the stock to stand in his name, as owner, on the books of the bank. Liability reaches the one because of the fact of his ownership of the stock, and the other because of his being precluded from denying ownership. This liability may be enforced against both, jointly, or against either."

In Chapman v. Pettus (Tex.Civ.App.) 269 S.W. 268, 270 (writ ref.), after recognizing the general rule, the court held: "But that general rule is no more settled than the specific rules that any person who holds himself out as the owner of shares, by allowing himself to appear as the registered owner on the books of the bank, may be treated as a stockholder; that one holding stock for an undisclosed principal may be held liable as a stockholder, although in fact he is only an agent; that although a trustee, as such, is not liable, yet when stock appears unincumbered in his name, he is liable."

■ This same rule was again recognized and reaffirmed by the Supreme Court in answer to certified questions in Shaw v. Green, 99 S.W.(2d) 889, 892, and is no longer an open question. The rule is applicable whether the real owner of stock has disposed of it to another in good faith, but has permitted the books of the bank to continue to show ownership in his name; or whether, having never in fact really owned such stock, he has knowingly, as here, permitted the books of the bank to show that he owned it and in effect held himself out to the public as such owner. This was not only done in the instant case by the mere showing of ownership by Carter of such stock on the books of the bank, but in furtherance of such misleading record, appellant was acting as, and holding himself out to the bank's creditors as, a director of such bank. Under these circumstances, Carter was clearly estopped to subsequently deny ownership of the stock carried in his name.

His liability, however, is referable, not to the date the bank closed on January 18, 1933, but to October 8, 1932, when he surrendered the stock certificates duly reassigned to Steffins to the vice president of the bank with instructions to said officer to enter such transfer at that time on the books of the bank. In doing so he did all that he was legally required to do in order to have the transfer made of record and his liability thereon should be determined as of that date. Chapman v. Beeman (Tex.Civ.App.) 265 S.W. 243; Shaw v. Green (Tex.Com.App.) 99 S.W.(2d) 889, 892, and authorities there cited.

■ The trial court erred, however, in fixing liability against Carter predicated upon the insolvent condition of said bank as of January 18, 1933, when it was closed. No issue is made as to the commissioner's finding of its condition on that date. Its insolvency at that time is admitted. But there is no proof whatever as to the condition of said bank on October 8, 1932, whether it was insolvent on that date, or what debts it then owed, if any, which it was unable to pay; nor did the Banking Commissioner make any findings in that regard. Since Carter's liability must be determined as of that date, it is now settled that it was incumbent upon the commissioner to show both that such liability existed at the time he transferred said stock, and what that liability was. This exact question was decided in Pool v. Chapman, 283 S.W. 762, 764, opinion of the Commission of Appeals, approved by the Supreme Court, wherein it is said: "It is only where the insolvency of the bank relates back to the time when the former stockholder owned his stock that there can be any liability. There could certainly be no presumption of insolvency at the date of the transfer of stock when it is not even shown that any debts existed at that time in excess of its assets."

As above stated, there being no proof whatever as to the condition of said bank on October 8, 1932, what if any, debts it then owed, and, if so, whether said bank was then unable to pay them out of the assets it then had, the Banking Commissioner did not meet the requirements of the law necessary to establish liability against Carter. For this reason, the judgment of the trial court must be reversed and the cause remanded for another trial.

Reversed and remanded.