**GOSSETT, Banking Com'r of Texas, v. MOORE.**

No. 14071.

Court of Civil Appeals of Texas. Fort Worth.

April 12, 1940.

Rehearing Denied May 24, 1940.

Ira Butler, of Fort Worth, for appellant.

Joe H. Cleveland, of Arlington, for appellee.

BROWN, Justice.

Appellant, Banking Commissioner of the State of Texas, by virtue of the authority vested in him, closed the First State Bank of Arlington, Texas, on April 12, 1937, because of its insolvency, and made the authorized 100% assessments against the stockholders of record. Appellee was shown to be the holder of three shares of stock in the defunct bank, each share being of the par value of $100, as disclosed by the stock register of the bank.

After such assessment and demand and the refusal of appellee, Hugh M. Moore, to pay such assessment, suit was brought against such stockholder of record. Moore answered that, in February, 1936, he purchased a motor vehicle from Universal Motor Company and traded in his shares of stock on the trade. He alleged that Thomas Spruance was the president of said bank and likewise president of said Universal Motor Company. That he delivered the stock certificate to Spruance at the said bank and requested him to transfer same on the books of the bank and that Spruance promised to do so at once. That the purchase price of the stock was charged to Spruance on the books of Universal Motor Company.

Moore thus denied any negligence on his part to comply with the provisions of Article XVI, Section 16, of the Constitution of Texas, Vernon's Ann.St., and of Article 535, Rev.Civil Statutes of Texas, 1925.

The cause was tried to the court and judgment rendered for the defendant Moore. Hence the appeal.

The fault that we find with the record is the lack of evidence to support the judgment. Moore's testimony is as follows:

"Q. All right. Now, when you consummated the trade, what did you do with the bank stock? A. Mr. Wright made the trade, and I went down and delivered the stock to Thomas Spruance.

"Q. Tell the court here what conversation, if any, pursued between you and Mr. Spruance at that time. A. I went in the bank. It took two or three days to make the trade. In other words, they were dickering backwards and forwards. Finally I traded with Mr. Wright, and I went down in the morning. I had a funeral that morning, and so I went down there and told Tom—he was the president of the Universal Motor Company—made the deal and everything with him, and I went down and got the bank stock and gave it to him out of my lock box, gave it to him. He was the president of the bank, and so he took them right then and wrote on some little book and says, 'I will tend to it right now.'

"Q. And you endorsed that certificate on the back at that time? A. I will declare I don't remember whether I endorsed it or not.

"Q. Mr. Spruance assured you, however, at that time, he would attend to the details of it? A. Yes; I asked him about it, and he said he would fix it."

We do not believe that this testimony is sufficient to meet the requirements as laid down by Chapman, Com'r v. Beeman, Tex. Civ.App., 265 S.W. 243, Chapman, Com'r, v. Sparks, Tex.Civ.App., 283 S.W. 338, and Carter v. Brand, Com'r, Tex.Civ.App., 106 S.W.2d 332, all of which are relied upon by appellee.

Moore did not testify that he endorsed his stock certificate, neither did he testify that he told Spruance, the president of the bank, to transfer the stock on the books of the bank.

Because of the insufficiency of the evidence, the case must be reversed and remanded.

We do not believe that the doctrine of notice is available in this case, where Spruance was president of both corporations—the bank and the Motor Company—and where it appears that he was buying the stock from the Motor Company, after it had traded Moore a motor vehicle, for the stock and other consideration. There was a conflict of interests, under such circumstances.

Teagarden v. R. B. Godley Lbr. Co., 105 Tex. 616, 154 S.W. 973.

The judgment is reversed and the cause remanded.